LINNEY *v.* THE CLEVELAND TRUST CO. ET AL.

(Decided October 29, 1928.)

*Mr. H. L. Deibel,* for plaintiff in error.

*Messrs. Garfield, Cross, MacGregor, Daoust & Baldwin,* for defendants in error.

LEVINE, J. Error proceedings are prosecuted to this court from the judgment of the common pleas court, wherein a demurrer by plaintiff to defendant's answer was overruled, and, plaintiff not de-

siring to plead further, the prayer of plaintiff's petition was denied and judgment rendered against the plaintiff.

In the plaintiff's petition it was sought to have declared void a residuary gift to the defendant, the Cleveland Trust Company, contained in the will of Robert N. Linney, deceased, in trust for the Cleveland Foundation, and a resulting trust declared in favor of the heirs at law and next of kin of the testator.

In his petition, after alleging that plaintiff, Arthur J. Linney, is a brother of the testator, who left no widow, children, or lineal descendants, plaintiff sets up in full a copy of the will. The residue of the estate is disposed of as follows:

"III. All the rest, residue and remainder of my property of whatsoever character and wheresoever situate, I give, devise and bequeath to The Cleveland Trust Co., of Cleveland, Ohio, as trustee, for the uses and purposes hereinafter expressed."

Then follows item IV of the will, which reads as follows:

"Subject to the foregoing provisions, I direct that the entire net income derived from the trust estate shall be annually expended or appropriated, perpetually, until the principal may have been disbursed, for the charitable uses and purposes set forth in a resolution adopted by the board of directors of the Cleveland Trust Co., on the second day of January, 1914, providing for a community charitable trust, designated in said resolution as The Cleveland Foundation. I further direct that the trust estate, both principal and income, shall thereupon vest in The Cleveland Trust Co., and

be managed, controlled and disbursed in all respects as provided in said resolution, reference to which is hereby made, as fully and with like effect as if herein set forth at length.''

There is an averment in the petition as to the probating of the will and the qualification of the defendant as executor. The petition then proceeds as follows:

''Plaintiff is informed and avers the fact to be that the resolution referred to in said last will, and sought to be incorporated into said last will, was adopted by the board of directors of The Cleveland Trust Company on January 2, 1914, and, when adopted, was as follows   *   *   *.''

The text of the resolution is set forth in full in the petition. In substance, the resolution declares the willingness of The Cleveland Trust Company to accept gifts, devises, and bequests in trust for a charitable trust to be known as The Cleveland Foundation, describes in great detail the purpose of the trust, the organization thereof, the method of administration, and the powers and duties of the trustee with reference thereto.

The petition then avers, for lack of information, that the resolution was not in effect and was not in existence in written form at the time of the execution of the will, and also avers that the will fails to recite whether the resolution was in effect and in writing at the time of the execution of the will. It is upon these averments that the plaintiff's petition asserts that the attempted gift in trust is void for uncertainty, and that a resulting trust should be declared for the benefit of the heirs and

next of kin of the decedent, under the laws of descent and distribution.

The answer filed by the defendant makes a certain number of formal admissions, amongst which is the following:

"Defendant further admits that the resolution of the board of directors, set forth in the petition, except the marginal captions which are not a part of said resolution, was adopted by the board of directors of this defendant on January 2, 1914, and that said resolution was the resolution referred to in the will of said decedent, Robert N. Linney, and set forth in full in the petition."

Then follows an important averment in the answer:

"Defendant states that said resolution adopted by its board of directors on January 2, 1914, was spread upon the minutes of the meeting of said board in its corporate records, and was before and on the date of the execution by said Robert N. Linney of his said will, namely, July 2, 1922, and at all times since said dates was and still is in writing and in full force and effect."

For the purposes of the demurrer we must assume that the resolution adopted by the board of directors of The Cleveland Trust Company, January 2, 1914, and referred to in the will of the testator, was spread upon the minutes of the meeting of the board in its corporate records, before the date of the execution by Robert N. Linney of his last will and testament, namely, July 2, 1922.

The grounds urged in support of plaintiff's demurrer to the defendant's answer may be summarized under the following headings:

"(1) That even if the minute book containing the resolution was at all times in existence, there is no incorporation because the will fails to assert its existence and fails to recite the pages of the minute book containing the resolution sought to be made part of the will;

"(2) That even if the resolution be declared properly incorporated, no valid public charitable trust is created for the reasons (a) that for uncertainty equity cannot enforce it, and (b) that its uncertain terms include private purposes."

It is claimed by plaintiff that under the doctrine of "Incorporation by Reference" the resolution of the board of directors of The Cleveland Trust Company, of January 2, 1914, is ineffectual to make the resolution a valid part of the will of the testator. Quoting from Page on Wills (2d ed.), Section 243: "In order to incorporate a document into a will by reference, the following requisites must exist, even in states which recognize the general doctrine. The will itself must refer to such paper to be incorporated as being in existence at the time of the execution of the will, in such a way as reasonably to identify such paper in the will, and in such a way as to show testator's intention to incorporate such instrument in his will and to make it a part thereof. Such document must in fact be in existence at the time of the execution of the will. Such document must correspond to the description thereof in the will and must be shown to be the instrument therein referred to. These requisites must co-exist in order to incorporate a document into the will. The absence of any one of them will prevent such incorporation."

Also Rood on Wills (2d ed.), Section 250: "To establish a separate writing as part of a will in this manner, three things must appear on the face of the will: * * * 1. There must be a distinct reference to such writing, so explicit, it has been held, as to identify it beyond doubt; but much less has often been held sufficient, and parol evidence is of necessity received to identify the writing. 2. The reference must indicate that the writing has already been made, that is, must speak of it as then existing. It is not enough that the writing was in fact made before the will; the will must speak of it as if then made. 3. It can be given effect only in case, and to the extent, that such appears from the face of the will to have been the wish of the testator."

It is argued that the will does not set forth the body of the resolution. The language of the will relating to the subject is "for the charitable uses and purposes set forth in a resolution adopted by the board of directors of The Cleveland Trust Company on the second day of January, 1914—reference to which is hereby made, as fully and with like effect as if herein set forth at length."

It is further urged that from a reading of the will we do not know whether it is in writing or whether it was oral; that, if in writing, when it was written and where the writing is to be found. In short, that the identity of the writing is not revealed by the provisions of the will.

In the clearest sort of language the operation of the doctrine of incorporation by reference is set forth in 28 Ruling Case Law, 112, as follows: "If a will, duly executed and witnessed according to statutory requirements, incorporates into itself by

reference any document or paper not so executed and witnessed, whether such paper referred to is in the form of a will, codicil, deed, or a mere list or schedule, or other written paper or document, such paper, if it was in existence at the time of the execution of the will, and is identified by clear and satisfactory proof as the paper referred to, takes effect as a part of the will, and is entitled to probate as such. The intention of the testator to incorporate the paper or document in question must, however, clearly appear from the will, a mere reference thereto without evidence of such intention being insufficient. There must be an actual reference, and parol evidence is not admissible to identify the document referred to, where a will attempts to incorporate the contents of an extrinsic document without identifying it in a clear, explicit, and unambiguous manner.''

Also in 40 Cyc., page 1084, as follows: ''If a properly executed will incorporates in itself by reference any document or paper not so executed, whether it be in form of a will or codicil, or of a deed or of a mere list or memorandum, the paper so referred to, if it was in existence at the time of the execution of the will and is identified by clear and satisfactory proof as the paper referred to therein, takes effect as part of the will. It is not essential that the paper referred to be itself a dispositive instrument. However, it is well settled that, in order that a paper may be incorporated in a will by reference, it must be referred to in the will as existing, and it must in fact be in existence at the time of the execution of the will.''

In defendant's brief, cases bearing upon this doc-

trine, decided in the various states of the Union, are set forth. We shall not refer to these cases in detail, except to give a reference to them: *Newton* v. *Seaman's Friend Society,* 130 Mass., 91, 39 Am. Rep., 433 (1881); *Estate of Plumel,* 151 Cal., 77, 90 P., 192, 121 Am. St. Rep., 100 (1907); *Bresler's Estate,* 155 Mich., 567, 119 N. W., 1104 (1909); *Watson* v. *Hinson,* 162 N. C., 72, 77 S. E., 1089, Ann. Cas., 1913A, 870 (1913); *Baker's Appeal,* 107 Pa., 381, 52 Am. Rep., 478 (1885).

An examination of the cases cited in defendant's brief shows clearly that the authorities are agreed upon the elements of the rule of incorporation by reference. The statement from Page on Wills, quoted in plaintiff's brief, is a clear statement of the law upon that subject. Analyzing that statement, we find the following elements:

"1. The will must refer to the instrument which is to be incorporated, as one which is already in existence.

"2. A reference to the document in language clear and explicit enough to identify the document.

"3. Language showing an intention on the part of the testator to incorporate the document into the will and to make it a part of the will.

"4. The document must have been actually in existence at the time of the execution of the will.

"5. The document in question must answer the description thereof, given in the will."

Taking the pleadings as a whole, it must be assumed for the purposes of demurrer that the resolution referred to in the will, and which is set forth in full in the plaintiff's petition, was in existence at the time of the making of the will, it having been

spread upon the minutes of a meeting of the board in its corporate records on January 2, 1914. There can be no doubt about the language of the will showing an intention on the part of the testator to incorporate the resolution into the will and to make it part of the will. Language cannot make this intention any clearer than is expressed in the will itself. Note the concluding statement of item 4 of the will, after referring to the resolution adopted by the board of directors of The Cleveland Trust Company. It states: "I further direct that the trust estate, both principal and income, shall thereupon vest in The Cleveland Trust Company, and be managed and controlled and disbursed in all respects as provided in said resolution, reference to which is hereby made, as fully and with like effect as if herein set forth at length."

It seems to us that, relying upon the quotation from Page on Wills, as found in plaintiff's brief, item 4 of decedent's will meets all the requirements of incorporation by reference, unless it be the omission to state that the resolution was in writing. Since it appears, as admitted from the pleadings, that this resolution was in writing and was in existence at the time the will of the testator was executed. we must assume that the testator knew of that fact and prepared the will with reference thereto.

The language of item 4 of the will must be taken to have only one meaning, namely, that it refers to a written document in existence at the time of the execution of the will, in such explicit terms as will enable the court to identify the document referred to, and also shows a definite intention on the part

of the testator to incorporate this written document into the will and make it part thereof.

Relying upon the authorities cited by plaintiff, concerning which there can be no dispute, we hold that the elements of incorporation by reference were fully satisfied so as to enable the court to give effect to the full intention of the testator by incorporating the resolution referred to in the will and making it part thereof.

We now approach the second portion of plaintiff's argument, namely, that no valid public charitable trust is created by this will, for the reasons (a) that for uncertainty equity cannot enforce it, and (b) that its uncertain terms include private purposes. A reference to the resolution which is set forth in full in plaintiff's petition will aid us in determining that question. The resolution states that the trust is known as The Cleveland Foundation. It also states that the funds shall be annually devoted perpetually to charitable purposes. Then follow certain particular charitable objects for which the funds shall be available, namely, "for assisting charitable and educational institutions whether supported by private donations or public taxation, for promoting education, scientific research, for care of the sick, aged or helpless, to improve living conditions, or to provide recreation for all classes, and for such other charitable purposes as will best make for the mental, moral and physical improvement of the inhabitants of the city of Cleveland, as now or hereafter constituted, regardless of race, color or creed, according to the discretion of a majority in number of a committee to be constituted as hereinafter provided."

The resolution expressly states that these particular objects stated are not to be regarded as exclusive, but merely that they may be embraced within the objects of the foundation.

The claim that, because of the uncertainty of the object, a court of equity cannot enforce it, and that therefore such indefiniteness renders it void, cannot be seriously taken. It is universally held that indefiniteness is a necessary characteristic of charitable trusts; that, if the objects of the trust are not sufficiently defined in the instrument, the fault, if any, is cured by the appointment of trustees with powers to select the objects within the classes named. The trustees having such powers of selection are subject to the control of the court, may come to it for instructions, and can be restrained by it from diverting the funds to uses not contemplated by the creator of the trust.

In *Gearhart* v. *Richardson,* 109 Ohio St., 418, 142 N. E., 890, the court goes into the question of the elements of a charitable trust. Parts of the language of the opinion will prove helpful to our discussion.

Page 432 of 109 Ohio State (142 N. E., 894) : ''The general doctrine is that charitable trusts have been favored, and trusts created for such purposes are carried into effect by courts of equity upon general principles of equity jurisprudence under circumstances where private trusts would fall; and this indefiniteness of beneficiaries is one of the characteristics of charitable trusts, and the uncertainty of the persons to be relieved by a charitable fund should never be called into effect for the purpose of destroying the charitable trust. We think that

the conclusion reached by the courts below in declaring this trust void for want of beneficiaries, or uncertainty of beneficiaries, is far too narrow a construction, and not justified by the record and not in accord with the great weight of authority in this state.''

Page 435 of 109 Ohio State (142 N. E., 895) : ''We think the rule to be well established in this country, in construing charitable trusts, that if the founder thereof describes in the instrument by which he creates the charitable trust the general nature thereof and names the class of beneficiaries, he may leave the details of its administration to be settled by the trustees, under the guidance of a court of equity (*In re Upham Estate,* 127 Cal., 90, 59 P., 315), and that where exact conformity to the plan of the person who has provided by his will for the charitable trust cannot be carried out in exact detail such object will be attained and duty performed with as close approximation to the original plan as is reasonably practicable, provided the same is in conformity and consistent with the charitable purposes named by the founder; that, at least, a court of equity will not permit such charitable trust to fail because of some slight deviation or change from the original plan, if the general purpose named by the creator of the trust is still attained.''

Within the rule stated, it seems to us that there is sufficient certainty in the trust known as the Cleveland Foundation to enable a court of equity to supervise the actions of the trustee and to compel an application of funds intrusted to its care for charitable objects only.

The contention of the plaintiff that the trust is

against public policy seems to be founded upon "the fear that if this Cleveland Foundation is permitted to continue it will enable The Cleveland Trust Company, a private corporation, operated for profit, to have full sway not only over the minds but also over the souls and bodies of the people of Cleveland."

Of course, plaintiff's counsel presupposes that, under the powers vested in the committee, the funds may be devoted to the propagation and promotion of doctrines inimical to democracy. With this conclusion, however, we do not agree.

The resolution sets forth that the funds shall be devoted to charitable objects only, and also sets forth a few specific purposes for which the funds may be available.

It is, of course, highly imaginative to even assume that the trustee under the Cleveland Foundation plan will attempt to use the funds intrusted to its care for the propagation and adoption of ideas inimical to democracy. A perusal of the resolution which provides the manner in which the members of the committee of the Cleveland Foundation shall be appointed offers a fair measure of protection against even such a remote evil as is mentioned by plaintiff's counsel. The committee is selected as follows: Two members by the directors of The Cleveland Trust Company; one by the mayor or chief executive officer of the city of Cleveland; and one by the judge of the probate court; one by the senior or presiding judge of the United States District Court for the Northern District of Ohio. It seems, therefore, quite remote to even imagine that a majority of the members of the committee would

lend themselves to any action that would constitute a clear violation of the duties imposed upon them under the provisions of the resolution.

The real purpose of the Cleveland Foundation can best be described in the language of its creator. The late Frederick H. Goff, a citizen of the highest standing, a lawyer of great eminence, and a man experienced in business affairs, expressed the purpose of the Cleveland Foundation in the following language:

"To receive and to safeguard donations in trust under supervision imposed by state legislation; to employ the principal or income, or both, for educational and charitable purposes in a broader and more useful manner in future years than it is now possible to anticipate; to provide for specific needs stipulated by the donor; to insure the perpetuity of principal when that is desired; to lessen preventable errors of judgment in the disposal of principal and income; to guard against unwise use of income and principal by beneficiaries; and by a union of available funds to promote the civic, moral and mental welfare of the people in the widest, wisest, more economical and most efficient manner."

He conceived and developed the idea that people of limited means should have the opportunity for the wise and beneficent use of funds which they desire to devote to charitable uses. Note his language:

"People of limited means share with men of wealth the desire that the world may be better for their having lived. They often feel a deepening sense of regret as the shadows lengthen, that the effort to work their way up stream and to accumu-

late has too fully consumed their energies; that the struggle has been too much for self and family and too little for mankind. They would welcome finding a way in which the residuum of their estate, whether it be large or small, might be wisely used in helping to make better men and women. Unable to determine what the needs of the future will be, when funds from their estate might be available for such use, and precluded because of the expense from making use of a privately owned foundation with its self-perpetuating board of trustees, their purpose can only be accomplished through a corporate trusteeship willing to serve all alike who are desirous of having such use made of their surplus wealth.''

In recent years, the matter of philanthropic endeavor has engaged the attention of men and women skilled along these lines until there has developed what is commonly known as scientific giving or scientific charity. There are, of course, a large number of people who still believe in indiscriminate and haphazard giving. There are those who urge that charity is prompted by heart impulses, and should not be subject to ironclad scientific rules. Likewise, there is a growing number of people who believe that the greatest kindness can be bestowed upon the needy by dispensing charitable funds along definite scientific lines, such as are sanctioned by scientific charity. Charitable people who desire to bestow their money or property upon the poor and needy, or to promote the objects of science and civic endeavor, have the right and discretion to either use their own judgment and designate a plan of their own, for the application of funds and property left

by them for any given purpose, or to seek the advice, counsel, assistance, and direction of men and women skilled along these lines of human endeavor.

The Cleveland Foundation merely enables men of lesser means to get the benefit of the advice and direction of experts, in charge of the foundation, as to the manner in which funds left in its care shall be disposed of and how they shall be applied.

We have thus far discussed in the main purely technical matters. We now come to what we regard as the essence of this case. We may assume for the purpose of argument that the plaintiff's contention is right; namely, that the resolution referred to in the will cannot be held to have been incorporated in the will.

We shall therefore proceed to examine into the matter and to regard the case as if the resolution was not incorporated in the will.

The will is definite upon one point, namely, that it was the clear intention of the testator that The Cleveland Trust Company shall be vested with legal title in the property left by the testator, with certain definite powers of disposition granted to it under the will. One thing is certain, it is clearly the intention of the testator that The Cleveland Trust Company shall act as trustee only. It certainly was not the intention of the testator that The Cleveland Trust Company, trustee, shall keep the property comprised in the residuary clause and apply it to its own use.

Counsel for the plaintiff urges that a resulting trust ensues, and that The Cleveland Trust Company must hold this property comprised in the residuary clause for the benefit of the heirs at law

and next of kin of the testator. It must be remembered, however, that the doctrine of a resulting trust is based upon the presumed intention of the testator, and such trust is never permitted to arise when it is manifestly against the intention of the testator. Reading the entire will, and regarding its four corners, as our guide, we are led to but one conclusion, namely, that, no matter what the testator may have intended, he did not intend that his heirs at law and next of kin should be the beneficiaries under this trust arrangement.

The Cleveland Trust Company is quite anxious to fulfill the duties imposed upon it, and it has a right to come to a court of equity for guidance. Let us bear in mind that, under the allegations of the pleadings, it is quite clear that The Cleveland Trust Company caused the resolution set forth in full in plaintiff's petition to be adopted by its board of directors, and it is not unreasonable to assume that the testator knew of that resolution.

It is therefore clear that, when the testator vested the legal title to the property comprised in the residuary clause in The Cleveland Trust Company, as trustee, he did it relying upon the resolution set forth in the plaintiff's petition wherein The Cleveland Trust Company, through the committee of the Cleveland Foundation, held itself ready and willing to act as trustee. Under such circumstances, it is our opinion, in the light of precedent, that in Ohio courts of equity will of their own initiative find out and discover the purpose for which the trust was created even though verbal conversation and instructions have to be resorted to in order to determine the object and purpose of the trust.

In the case of *Winder* v. *Scholey,* 83 Ohio St., 204, 93 N. E., 1098, 33 L. R. A. (N. S.), 995, 21 Ann. Cas., 1379, full discussion is found upon this point. In that case the testator desired to leave his property to a lodge in Dayton, Ohio. He was an old man, and at the time of the making of the will not in goòd health. He was advised that, if he died within a year after making the will, the legacy to the lodge would fail, and that it would be better to bequeath his property to one or more members of the lodge in whom he could trust to give his estate to the lodge. This he did. After the settlement of the estate, the legatees named in the will refused to carry out the trust reposed in them. The court laid down the law in the first and second propositions of the syllabus as follows:

"Where a testator is induced to make an apparently absolute legacy, by a promise, express or implied, on the part of the legatee that he will transfer the legacy to another, although no express trust is created and although the legatee at the time of the promise intended no fraud, a court of equity may interfere to prevent a wrong, and declare the legatee a trustee *ex maleficio* for the protection of the testator's intended beneficiary.

"A trust in an absolute legacy may be established by parol evidence, and the contemporaneous declarations of the testator, and subsequent declarations of the legatee, that the bequest was made for the benefit of a third person upon the promise of the legatee to hold it in trust, are admissible for that purpose."

We recognize, of course, that there is a slight difference between the will in the case at bar and the

will in *Winder* v. *Scholey,* in that in *Winder* v. *Scholey* the will upon its face shows an absolute legacy, while in the case at bar the trust appears in the will.

The language of the opinion found in *Winder* v. *Scholey* is quite helpful to our discussion. On page 218 of 83 Ohio State (93 N. E., 1100) the following language is found:

"Whenever it appears that the testator was prevented from action by the action or silence of a legatee, who knew the facts in time to act or speak, he will not be permitted to apply the legacy to his own use when that would defeat the expectations of the testator."

Again, on page 219 of 83 Ohio State (93 N. E., 1100), we find:

"Where a person knowing that a testator, in making a disposition in his favor, intends it to be applied for purposes other than his own benefit, either expressly promises or by silence implies that he will carry the testator's intention into effect, and the property is left to him upon the faith of that promise or undertaking, it is in effect a case of trust, and in such a case the court will not allow the devisee to set up the Statute of Frauds—or rather the Statute of Wills, by which the Statute of Frauds is now in this respect superseded—and for the reason that the devisee by his conduct has induced the testator to leave him the property."

We are unable to distinguish the case at bar from the case of *Winder* v. *Scholey, supra.* If a trust shall be engrafted upon an absolute legacy in a will by oral testimony, we see no reason why such oral testimony, under the same principles, could not be used

to determine the beneficiaries and the amount they are to receive, where it appears from the will that the legacy was given in trust.

We shall quote from 3 Pomeroy's Equity Jurisprudence (3d Ed.), note on page 2037, as follows: "The object of the trust must, however, be communicated to the legatee or devisee in the testator's lifetime; otherwise there cannot be that acquiescence or implied promise on the part of the former which is necessary to raise the trust: See *In re Boyes*, L. R., 26 Ch. Div., 531 In*Oliffe* v. *Wells*, 130 Mass., 221, the distinction was made that where the will shows on its face that the devise or bequest is in trust, but the purposes of the trust are not stated, then the equitable estate results to the heirs at law or next of kin of the testator, and cannot be divested by anything short of a testamentary disposition. This distinction seems to be entirely unsupported by authority; indeed, in many of the cases cited in this note the devise or bequest was expressed to be in trust, and not absolute: See *Cagney* v. *O'Brien*, 83 Ill., 72; *Podmore* v. *Gunning*, 7 Sim., 644; *In re Fleetwood*, L. R., 15 Ch. Div., 594; *Riordan* v. *Banon*, 10 Ir. Eq., 469; *Curdy* v. *Berton*, 79 Cal., 420, 12 Am. St. Rep., 157, 21 Pac., 858 [5 L. R. A., 189]. In *Carver* v. *Todd*, 48 N. J. Eq., 102, 21 Atl., 943, 27 Am. St. Rep., 466, a trust arising out of an oral promise by a devisee was enforced against the creditors of the devisee."

It is true that statutes of wills prescribe certain formalities with which a will must be executed. The will in the case at bar was executed with all the formalities required by statute. The purpose of the court must be, wherever possible, to carry the in-

tention of the testator into full effect. If the contention of plaintiff's counsel is found to be correct, the court would, of course, reach the obvious conclusion, namely, that the intention of the testator will not be carried into effect if a construction be given the will which is manifestly against such intention. He clearly intended that his heirs and next of kin should not be the beneficiaries under the trust arrangement set forth in the will. The will is sufficiently clear upon one point, that he vested title to the property comprised in the residuary clause of the will in the trustee for charitable purposes. If the will had said no more, it would still be the duty of the court to inquire if any evidence, parol or written, can be found to cast light upon it, and to determine the object and purpose as well as the beneficiaries intended under the trust arrangement.

From the pleadings it appears quite clear that, with knowledge of the resolution passed by The Cleveland Trust Company, establishing the trust called "The Cleveland Foundation," he vested title to his property in The Cleveland Trust Company, as trustee, for the purpose of carrying out such objects and purposes and to apply it to such objects and purposes.

We are therefore of the opinion that it is unnecessary to indulge in learned discussions concerning the rule of incorporation by reference; that we may be content to rest our conclusion upon the precedent set before us in Ohio in the case of *Winder* v. *Scholey, supra.*

The Cleveland Trust Company, as trustee, is of course anxious to carry out the purpose expressed in its resolution of 1914, and willing to assume that

such was the intention of the testator. The alternative would be either to defeat the intention of the testator, by giving the property to the heirs and next of kin of the testator, or to allow the trustee to use it for its own purposes, in which case the trustee, much against its own wishes, would be compelled to, in effect, perpetrate a fraud. Courts of equity, which are courts of conscience, cannot suffer either alternative, but will seek, wherever possible, and by whatever means possible, to ascertain the real intention of the testator.

Holding as we do, we reach the conclusion that the common pleas court was right in overruling the demurrer as it did and in rendering judgment in favor of the defendant.

*Judgment affirmed.*

SULLIVAN, P. J., and VICKERY, J., concur.