**ECKENROTH, Plaintiff-Appellant, v. STONE, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24607.   Decided April 21, 1959.

McDonald, Hopkins, Hood and Hardy, for plaintiff-appellant.
Feighan & Feighan, Ned L. Mann, for defendant-appellee.

(DOYLE, PJ, HUNSICKER, J, of the Ninth District, RADCLIFF, J, of the Fourth District, sitting by designation in the Eighth District.)

## OPINION
By RADCLIFF, J:

This lawsuit was instituted by the plaintiff in the Common Pleas Court of Cuyahoga County, Ohio, to impress a constructive trust upon a certain piece of real estate which the plaintiff claimed, the defendant acting as his agent, purchased and took title in his own name, then

refused to convey the property upon the tender of the actual purchase price by the plaintiff to the defendant. The issues are made up by the second amended petition of the plaintiff, which alleges in substance that the defendant induced the plaintiff to hire him to negotiate for the purchase of a certain tract of land, being 15309 Brookpark Road, located in the village of Brookpark, Cuyahoga County, Ohio. Plaintiff further alleges that defendant was to purchase the property for $11,000 and was to be paid $200 for his services. The defendant did purchase the property for the sum of $11,000, but took title in his own name and upon the tender of the sum claimed to have been agreed upon refused and still refuses to convey the property in question. The defendant's answer contains a general denial, raises the defense of the statute of frauds and denies any agency between the defendant and the plaintiff.

The facts are in great dispute, not only is there divergence and open conflict between the testimony of the witnesses that appeared on behalf of the plaintiff and the witnesses that appeared on behalf of the defendant, but there is a great deal of conflict and confusion in the testimony of the plaintiff and the witnesses that appeared for him. In order to bring the factual picture into proper perspective we will try to state the consensus of the evidence on both sides and later on in the opinion point out some of the most serious differences. The plaintiff's version of the factual situation is that on or about the 10th day of May, 1955, the defendant came into the plaintiff's place of business in the city of Cleveland, they had been friends of some 20 years standing, and told him that he knew of a nice piece of property that he, the defendant, could probably purchase and wanted to know if the plaintiff was interested, that at that time the plaintiff in the presence of his witnesses told the defendant to go ahead and buy it and take the title in the plaintiff's name. A day or so later the plaintiff and his general manager, a Mr. Bregman, drove past the property in question and to the Municipal Building in the village of Brook Park to determine whether or not there were zoning laws that might interfere with the use to which the plaintiff might wish to put the property in the event it was purchased. They drove past the property but did not stop for any length of time. About the 17th of May, plaintiff, Mr. Bregman and the defendant visited the property located at 15309 Brookpark Road and there discussed or talked to the owner of the property in question, a Mrs. Madelynn Zelis. At this conference the plaintiff stated that he found out for the first time that the property could be purchased for $11,000 and further that he at that time authorized the defendant to buy it at $11,000 and that he would pay him $200 for his trouble. Incidentally Mrs. Zelis said that she did not state the price of the property at the meeting on May 17, and further that the asking price was $13,000 at that time. At this same meeting it was disclosed that Mr. Zelis was en route to Cleveland from a business trip in Italy and would be back in a few days and that it would be necessary for him to handle the final negotiations, if any. The plaintiff contended that on two or three different occasions, between the 10th and 21st of May, he offered the defendant some money to be used as a down payment and that each time the defendant declined. On May 21,

606

the defendant entered into a purchase agreement with the owners, Mr. and Mrs. Walter Zelis, to buy the property in question for the sum of $11,000 and paid them $200 in earnest money. An escrow agreement was entered into by and between the buyer and seller and the Cleveland Trust Company on May 24, 1955. On or about May 24th the defendant was again in the plaintiff's place of business in the City of Cleveland and told them that he had paid $13,500 for the property, that he had taken title in his own name and that if the plaintiff wanted it he could have it at $13,500. That day or the next, the plaintiff by making inquiry of the Cleveland Trust Company discovered that the purchase price had been $11,000 and demanded that the plaintiff convey the property to him. The discussions back and forth continued until late in June when the defendant told the plaintiff that he had another party who would pay $13,500 and if the plaintiff didn't want the real estate he was going to sell it to a third person. The plaintiff filed his petition on July 1, 1955, seeking to impress the trust. He alleged in the second amended petition that tender was made on or about the 1st day of July of $11,200, but the record is silent as to any formal tender at any time. As we said there is a strong conflict in the evidence and it is deemed that we state the consensus of the plaintiff's testimony as to what the facts are.

The defendant claims that he did not discuss the property the subject of this litigation at any time with the plaintiff until after he had entered into an agreement to purchase; that he was at no time the agent for the plaintiff nor did he at any time agree to transfer the property to the plaintiff or take the title in the plaintiff's name at any given sum.

As we have said earlier the plaintiff and defendant had been friends and had business transactions during the past 20 years preceding 1955. By reading the record it is apparent that the defendant has a little difficulty with the English language. If his comprehension of it is no better than his construction and delivery he is at some disadvantage.

Now, to raise some of the points of conflict that are so apparent in the record. The plaintiff, Mr. Eckenroth, testified that the original negotiations started in April of 1955 between Mr. Stone and himself and that he had no idea as to the price of the property until he was told what it was on the 17th of May, 1955, by Mrs. Zelis. Mr. Leonard Bregman, manager of the plaintiff's trucking business, said that the negotiations began early in May, possibly on the 10th and that the defendant came into Mr. Eckenroth's place of business and said, "I have a nice property that I can get for you at $9500," and at that time Mr. Eckenroth told the defendant to go ahead and get it. If he could get it at $9500 he would pay him $500 for his trouble and to be sure that title was taken in Mr. Eckenroth's name. Mr. J. A. Kienes, Assistant Manager of Mr. Eckenroth's trucking concern and the dispatcher, said that negotiations started early in May, probably on the 10th by Mr. Stone coming in and saying there is a nice piece of property I can get for you at $7500 and that Mr. Eckenroth said go ahead and buy it and take title in my name. Mr. Eckenroth testified that he first discovered the asking price of the property on May 17 when Mrs. Zelis told him it was $11,000. This

Mrs. Zelis denied saying that she had not mentioned any price to Mr. Eckenroth and had she been asked the price she would have told him that it was $13,000 at that time. The defendant, Mr. Stone, denied that Mr. Eckenroth or Mr. Bregman either one talked to Mrs. Zelis at her home on May 17. Mr. Walter Zelis testified that he returned from a business trip to Italy on the 19th of May. That he had discussed the sale of the property on Brookpark Road with Mr. David Stone at least a year before. That he went to Mr. Stone's place of business directly across from his home on the 21st of May and asked if Mr. Stone was interested in buying it and Mr. Stone said yes, he would pay $11,000 for it. That Mr. Stone came over to his home later in the day and a contract was entered into between Mr. and Mrs. Zelis and David Stone at a price of $11,000. Mrs. Zelis testified that at the time the agreement was made on May 21, Mr. Stone told her that his man was no longer interested in the property, that he was buying it for himself. Mr. Zelis testified that there was no mention made of any third party being interested in the property and that he never heard anything about a third party purchasing the property or a Mr. Eckenroth until after the transaction had been completed.

Identical evidence was submitted in the Court of Common Pleas except the deposition of Mrs. Madelynn Zelis. Mrs. Zelis was ill at the time the case was first tried and by stipulation her deposition was added to the record in this court. The Common Pleas Court held that the statutes of fraud did apply to the factual situation and further that there was no agency or fiduciary relationship between the plaintiff and defendant.

Before we begin a general discussion of the legal principles involved there are two points that we wish to dispose of. Both points were raised for the first time in the briefs and were stressed in oral argument to this court. The plaintiff injected one of these and the defendant the other. Both are unique in that they are departures from the conception that most students of the law have as to certain principles. The first of these and the one raised by the plaintiff, is that the degree of proof necessary in order to impress a constructive trust arising out of the fraudulent conduct of an agent is by a preponderance of the evidence rather than by clear and convincing evidence. We have examined the various authorities cited both in and out of Ohio and can come to but one conclusion, namely that the degree of proof necessary to establish either a resulting trust or a constructive trust, is clear and convincing and cite in support thereof: Henricks v. Sundmaker (Illinois), 89 N. E. (2d), 732, Masters v. Masters (Maryland), 89 Atlantic (2d) 576, **Vincent v. Divine Peace Mission Movement (Oh Ap)**, 118 N. E. (2d) 190, **Crellin v. Parish (Oh Ap)**, 136 N. E. (2d) 454, **Mannix v. Purcell, 46 Oh St 102**, 23 A. L. R. 1512, 1538, 54 Am. Jurisprudence 480, section 621; 3 Bogert on Trusts 13, section 472, 1 Jones on Evidence 426, section 224.

The other question injected into the case by the defendant has to do with tender. The defendant's position being that tender means actual tender in specie of the sum alleged to have been tendered in the second amended petition. The strict construction of tender that the

defendant urges is that there must be the actual production of currency in the entire amount involved in the alleged contract. Here again after an examination of the authorities we are forced to differ with the defendant's strict construction of the law of tender and say that tender does not mean the actual presenting of specie in the entire amount and cite in support thereof: **Raudabaugh v. Hart, 61 Oh St 73, Thomas v. Matthews, 94 Oh St 32, Gebbie v. Efros, 95 Oh St 215,** 4 Scott on Trusts, 3220, section 499, Bonds v. Rhoads (Miss.) 35 Southern (2) 437, Restatement of the Law of Contracts, 919, section 481.

Earlier in this opinion we have made reference to the deposition of Mrs. Madelynn Zelis as being the only additional testimony which we have read that was not heard by the trial judge. This deposition instead of having the effect of clarification further complicated the factual pattern. In one particular it buttressed the testimony of Mr. Eckenroth but in a very important particular contradicted Mr. Eckenroth. In one particular it contradicted Mr. Stone yet by the same token it was helpful to his position and raised some question as to the extent of Mrs. Zelis' recollection of the entire transaction.

In this case, we are the triers of the facts and after a thorough and complete reading and re-reading of the evidence, I for one am most thankful for the jury system in our state. It is sometimes difficult to determine the law but at no time does it approach the difficulty one has in trying to determine the true facts in any given situation. We have concluded that the plaintiff to be entitled to the relief prayed for must establish the agency relationship and its conditions by clear and convincing evidence. This burden has not been met, it is impossible to tell at what time there was a meeting of the minds which must be present to create the relationship of principal and agent. It is impossible to say that if there had been a meeting of the minds what the terms were upon which they met. We have endeavored to resolve the conflicts and differences in this testimony but it is impossible for me to say that the facts which must be established by the plaintiff before he would be entitled to relief have been established by even a preponderance of the evidence so confusing and conflicting is the testimony of the plaintiff and his own witnesses.

We conclude therefore that the plaintiff, having failed to maintain the burden of proof by the degree required in equity, that the petition should be dismissed and final judgment rendered in favor of the defendant. We do not say that the statute of frauds is or is not an applicable rule of law in this case as it is not necesstary to the final disposition.

Decree accordingly.

DOYLE, PJ, HUNSICKER, J, concur in the judgment.