Appellants Thomas Cooper, Stephen Cooper, Karl Cooper, Abigail Cooper, and Amy Cooper appeal a decision by the trial court dismissing their declaratory judgment action against appellee Patricia Louise Cooper, individually and as administratrix of the estate of their deceased father, Dr. Alfred Cooper. In the complaint, the Coopers asked the probate court to impose a constructive trust upon Dr. Cooper's investment accounts for the benefit of the Coopers. The Coopers assign the following two errors for our review:
 I. THE TRIAL COURT'S AUGUST 4, 1999 ORDER OVERRULING THE MAGISTRATE AND DISMISSING PLAINTIFF/APPELLANT'S CAUSE OF ACTION WAS ERROR.
 II. THE COURT'S DENYING PLAINTIFF'S MOTION TO RECONSIDER WAS ERROR.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
On May 4, 1998, siblings Thomas Cooper, Stephen Cooper, Karl Cooper, Abigail Cooper, and Amy Cooper filed a declaratory judgment action against Patricia Cooper, widow of their late father, Alfred Cooper, and executrix of his estate. In their complaint, the Coopers averred that a prior action filed November 18, 1997 for suspected concealment of estate assets was voluntarily dismissed after discovery revealed that a declaratory judgment would more appropriately resolve the controversy.
The Coopers alleged that their father, Alfred Cooper, died on December 13, 1996. His will, dated December 30, 1985, was admitted to probate. The will named Patricia Cooper as executrix. The Coopers alleged that, before and after the execution of the will, both Alfred Cooper and Patricia Cooper had a verbal trust agreement that, upon Alfred Cooper's death, Patricia Cooper would acquire a life estate in several investment accounts owned by Alfred Cooper. Upon Patricia Cooper's death, the remainder interest would pass to the Coopers.
The investment accounts were set forth as follows:
 Fidelity Investments Mutual Fund $154,891.04 Lincoln Financial Advisors Fund $213,725.11 Dreyfus Tax Exempt Bond $ 52,416.22 American Legacy (Unknown) TIAA/CREF $289,194.13 TIAA/CREF $ 52,687.80
The Coopers also averred that they did not fully know the exact details of the beneficiary designations on the accounts or the correct names, amounts and details of all the accounts.
The Coopers asked the court to impose a constructive trust upon the investment accounts in order to affect Alfred Cooper's intent. They also sought a declaration that the investment accounts were intended to be included within the trust agreement between Alfred Cooper and Patricia Cooper, and that the investment accounts be made a part of Alfred Cooper's estate.
On June 5, 1998, Patricia Cooper filed a Civ.R. 12(B)(6) motion to dismiss the complaint for failure to state a claim upon which relief could be granted. Patricia Cooper argued that imposing a constructive trust against her was improper since she had not committed fraud or been unjustly enriched. She also argued that Alfred Cooper's decision to name her primary beneficiary of the investment accounts reflected his intent for her to have the full enjoyment of the property. She also argued that the declaratory judgment action was premature since she had the undisputed right to the property during her lifetime. Finally, she argued that, even if Patricia Cooper verbally promised Alfred Cooper that his children would receive a share of the investment accounts upon her death, such a promise was unenforceable pursuant to R.C. 2107.04, which provides that an oral agreement to make a will or devise is unenforceable.
On August 10, 1998, the Coopers filed their brief in opposition to the motion to dismiss. They argued that they need not demonstrate wrongdoing by Patricia Cooper in order to obtain a constructive trust, only that it would be inequitable for Patricia Cooper to retain the property in question. They argued that Patricia Cooper obtained possession of the investment accounts with the knowledge and understanding that she was only entitled to income generated from the accounts during her lifetime. The Coopers cited to Patricia Cooper's deposition testimony in which she stated that The understanding between me and my husband is that the money [from the investment accounts] would go to his children. (Patricia Cooper Depo. at 36.)
The Coopers argued that Patricia Cooper's agreement with Alfred Cooper was supported by consideration Patricia Cooper's promise that she was only to use the income from the annuities during her lifetime. The Coopers urged the court to apply principles of equity to their complaint. They also argued that Alfred Cooper's designation of Patricia Cooper as primary beneficiary of the investment accounts did not override the common law constructive trust doctrine. They also argued that, pursuant to her belief that she has unrestricted ownership of the investment accounts, Patricia Cooper might completely dispose of the funds and that speedy relief is necessary to preserve the Coopers' interests in those funds.
In her reply brief, Patricia Cooper argued that under the Employment Retirement Income Securities Act (ERISA), she was the automatic joint annuitant of the retirement annuities. Under26 U.S.C. § 408(a)(6), Alfred Cooper was prohibited from designating a beneficiary other than his spouse without an express written waiver by the spouse. She also argued that, under 26 U.S.C. § 408(a)(6), spousal consent is required to name a non-spouse as a beneficiary of the Individual Retirement Account (IRA). Patricia Cooper also argued that ERISA preempts state law with respect to the designation of beneficiaries.
In response, the Coopers argued that Patricia Cooper failed to produce any evidence as to the applicability of ERISA to the case and that they were not provided with information as to the exact details of the beneficiary designations on the accounts and the correct names, amounts and details of all the investment accounts. They further argued that the parties had not conducted any formal discovery and that Patricia Cooper had not yet authorized the Coopers to obtain additional information from Patricia Cooper about the current value of the accounts or their value at the time of Alfred Cooper's death. They further alleged that they were not attempting to deprive Patricia Cooper of her lifetime income from the accounts, only to prohibit her from transferring or bequeathing the corpus of the funds to persons other than the Coopers.
On November 10, 1998, the Magistrate recommended denial of Patricia Cooper's motion to dismiss the complaint,[1] concluding that defendant's motion is premature at this time for the reason that insufficient information has been provided to plaintiffs in order for them to completely respond to defendant's Motion for Summary Judgment. Patricia Cooper filed objections to the magistrate's report on November 24, 1998 alleging (1) there is no legal authority in Ohio authorizing imposition of a constructive trust under Patricia Cooper; (2) the plaintiffs were voluntarily provided with all information in Patricia Cooper's possession, neglected to procure additional information although authorized to do so, and failed to avail themselves of discovery.
On August 4, 1999, the court sustained Patricia Cooper's objections to the magistrate's report and dismissed the Coopers' complaint.
 The Court finds, after reviewing the entire file, including the Report of Magistrate, that there is no basis in Ohio law for what Plaintiffs are asking of this court. To ask this Court to order restriction upon Mrs. Cooper based upon the Decedent's alleged intent expressed over sixteen years prior to Decedent's death, would defeat the entirety of Ohio law with respect to the formalities of Wills and Trusts. Plaintiffs are asking this Court to do what, pursuant to Ohio law, cannot be done. The Court further finds that Plaintiffs have failed to allege any justiciable claim against Mrs. Cooper.
The Coopers subsequent Motion to Reconsider and to Vacate Dismissal Order and Judgment Entries of August 4, 1999 was denied by the trial court. This appeal followed.
Because the Coopers' two assignments of error both challenge the propriety of the probate court's decision not to impose a constructive trust upon Patricia Cooper, they will be discussed together. The Coopers argue that Patricia Cooper and Alfred Cooper agreed that the income from Alfred Cooper's retirement accounts would belong to Patricia Cooper during her lifetime and that, upon her death, the retirement accounts would be passed on to Alfred Cooper's children. The Coopers argue that, despite this agreement, Patricia Cooper obtained a power of attorney and used it to gain control of Alfred Cooper's assets. The Coopers argue that a constructive trust should have been imposed because it would be inequitable for Patricia Cooper to retain the property.
A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. In re The Estate of Cole (May 1, 2000), Butler App. No. CA99-03-059, unreported, citing Bilovocki v.Marimberga (1979), 62 Ohio App.2d 169, 171, 405 N.E.2d 337, 340.
While a constructive trust may arise when the property is acquired through fraud, duress, undue influence or mistake, or breach of fiduciary duty, it may also arise where the property holder has not committed any wrongdoing but is not equitably entitled to retain the property. See Cole; Ferguson v. Owens
(1984), 9 Ohio St.3d 223, 226, 459 N.E.2d 1293, 1295; UnionSavings and Loan Assoc. v. McDonough (1995), 101 Ohio App.3d 273,276, 655 N.E.2d 426, 428, discretionary appeal not allowed (1995), 72 Ohio St.3d 1551. A constructive trust may also arise where a person, knowing that a testator in giving him a bequest intends that it be used for the benefit of a third party, promises to carry out the testator's intention and then fails to do so. In re Eccles (Apr. 17, 2000), Clermont App. No. CA99-05-041, unreported, citing Linneyv. Cleveland Trust Co. (1928), 30 Ohio App. 345, 364, 165 N.E. 101[165 N.E.2d 101], 107.
In order to establish the existence of a constructive trust, the Coopers bear the burden of establishing it by clear and convincing evidence. Cole, citing Hill v. Irons (1953), 160 Ohio St. 21,29, 113 N.E.2d 243, 248; Eckenroth v. Stone (1959),110 Ohio App. 1, 5, 158 N.E.2d 382, 385. When reviewing a trial court's decision regarding a constructive trust, we must determine whether the trial court's decision was supported by some competent, credible evidence going to all the essential elements of the case.Cole, citing Robbins v. Warren (May 6, 1996), Butler App. No. CA95-11-200, unreported; Seasons Coal Co., Inc. v. City ofCleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276.
Where a person acquires property from a testator with knowledge that the testator intends for the property to be used for the benefit of others and promises to carry out the testator's wishes, a constructive trust may also arise when the promisor fails to honor his promise. In re Eccles (Apr. 17, 2000), Clermont App. No. CA99-05-041, unreported, citing Linney v. Cleveland Trust Co.
(1928), 30 Ohio App. 345, 364, 165 N.E. 101[165 N.E.2d 101], 107. However, a showing that there has been a moral wrong is not sufficient to warrant imposition of a constructive trust. Eccles,
citing Croston v. Croston (1969), 18 Ohio App.2d 159,247 N.E.2d 765.
In this case, the Coopers argue that Patricia Cooper should not be allowed to retain unrestricted ownership of the retirement accounts because she and Alfred Cooper agreed that the money from the accounts would go to Alfred Cooper's children. They base their claim on the following statement made by Patricia Cooper during her deposition: The understanding between me and my husband is that the money would go to his children. (Deposition of Patricia Cooper at 36.) However, Patricia Cooper made several other statements about her late husband's intentions.
 [W]hatever else was accumulated during the course of the marriage that he would leave for me and if there were funds available at the time of my death that I would give those funds, his share of our estate to his children.
(Deposition of Patricia Cooper at 13.)
 [H]e just simply trusted me to give to his children what he had accumulated in the way of finances that I did not need, you know, that were left at the time of my death. Things became more clear as we went along. * * * [F]ive years later we finally got around to making wills.
(Deposition of Patricia Cooper at 18.)
 [A]t the time of the will my husband had wanted to leave what he described as a token amount to his children and so we knew then what that implied. He had $25,000 in IRA's and he had the Pharoah [sic] stock and so at that point that would be divided, one-third of that would go to the children and two-thirds to me. I mean it was explained that that would really be what was involved in terms of probatable assets.
(Deposition of Patricia Cooper at 19.)
The evidence presented at trial revealed that, shortly after their marriage, Alfred Cooper named Patricia Cooper as the primary beneficiary on his retirement accounts and named his children as secondary beneficiaries. The evidence also established that the understanding as to the disposition of Alfred Cooper's retirement accounts was reached at least five years before the parties executed their wills in 1985. Patricia Cooper stated that, at the time he executed his will, Alfred Cooper intended to leave his children a token amount of money. In his will, Alfred Cooper bequeathed one-third of his probatable assets to his children. Patricia Cooper stated that it was explained that the probatable assets were Alfred Cooper's Ferro stock and $25,000 in IRAs. The will specifically provided that it did not apply to any property over which Alfred Cooper may have a power of appointment. The will remained in force and was never changed. This evidence makes clear that Alfred Cooper intended for his retirement accounts to pass outside the will to Patricia Cooper.
The Coopers urge us to follow In re Barnes (1950), 64 Ohio L. Abs. 6, 108 N.E.2d 88, affirmed (1952), 64 Ohio Law Abs. 28, 108 N.E.2d 101. In Barnes, an elderly, childless couple wanted to make sure that, if one of them predeceased the other, their respective siblings would receive equal shares of the unconsumed estate remaining at the other spouse's death. They communicated their intent to two of their neighbors as well as to Hattie Barnes' sister-in-law. The Barneses divided their property equally between them, making sure that each had the same number of bonds. Their checking account and building and loan account were held jointly. Also, they each executed identical wills providing that all personal property go to the surviving spouse for and during his or her natural life, as he (or she) may care so to do and use the proceeds in any way he (or she) may see fit. Barnes, *18. Hattie Barnes' will provided After the death of my said husband, George W. Barnes, I give and bequeath whatever remains of my said personal property to my brothers and sisters * * * share and share alike. Id.George Barnes' will contained a similar provision bequeathing the remainder of his estate to his siblings upon the death of Hattie Barnes.
George Barnes predeceased his wife and all of his property passed to Hattie Barnes under the terms of his will. Upon Hattie Barnes' death, George Barnes' heirs filed objections to the inventory for her estate alleging that George Barnes' assets had been co-mingled with those of Hattie Barnes and seeking to identify the assets subject to their remainder interest. The court imposed a constructive trust upon Hattie Barnes' estate in favor of George Barnes' heirs.
The Barnes court reasoned that the Hattie Brown's heirs could not assert the statute of frauds as a defense to the Barnes' agreement because the agreement had been partially performed when the Barneses divided their property equally amongst themselves and executed mutual wills.
 Where a husband and wife having no children and desiring that the property which they owned should be divided equally between the brothers and sisters of each, attempted to divide equally all their property and also executed wills leaving life estates to each other with remainder over in each will to the testator's next of kin believing that on the death of both the property would be so equally divided, but due to the fact that real property, held by joint and survivor ship deed vested in one at the death of the other who made no change in her will because she believed that on her death the property would be equally divided, the court, to carry out the intention of such persons, will declare a trust in such property for the benefit of the mistakenly omitted next of kin of the spouse who died first.
Barnes at par. 27 of syllabus.
The Barnes case is distinguishable from the case before us. In this case, even if Patricia Cooper orally agreed to leave the money to Alfred Cooper's children after her death, the agreement is unenforceable under R.C. 2107.04. See Kothe v. Kothe (Aug. 29, 1979), Lorain App. No. 2841, unreported; Dusenbery v. Clouse (May 14, 1999), Portage App. No. 98-P-0029, unreported. There was no partial performance in this case. Furthermore, the Coopers presented absolutely no evidence to support their claim that Alfred Cooper's decision to name Patricia Cooper as beneficiary on the retirement accounts was motivated by her promise to convey the funds to his children. Patricia Cooper stated that she was named beneficiary of the accounts shortly after her October 12, 1980 marriage to Alfred Cooper. When Alfred Cooper retired in 1991 at age 67, he named Patricia Cooper as primary beneficiary of his Case Plan A retirement annuity and his TIAA/CREF retirement fund. His children were named as secondary beneficiaries. At no time did he change the beneficiary designation or take any other action to formalize an intent that Patricia Cooper preserve the corpus of the retirement funds for distribution to his children.
We find persuasive authority in In re Bucholtz (Apr. 24, 1998), Greene App. No. P7CA0079, unreported. In Bucholtz, the decedent, Susan Hollars died in a fire and was survived by her minor son, Chaz Bucholtz. Hollars had three life insurance policies totaling $151,000, each naming her sister, Barbara Langdon, as beneficiary. Chaz Bucholtz's grandmother, Marjorie Blake, as guardian of his estate, filed an action against Langdon to recover the proceeds of the insurance policies, alleging the Hollars named Langdon as beneficiary upon the promise that the proceeds from the life insurance policies would be used for the benefit of Chaz Bucholtz.
The evidence revealed that Langdon was not aware of the policies until after Hollars' death. However, Langdon conceded that the money was given to her in a loving trust because Hollars wanted her to handle things for Chaz Bucholtz. Langdon also said she intended to give the money to Chaz Bucholtz at a later date and that she would want her husband to use the money for Chaz Bucholtz's benefit if anything happened to her.
The probate court found there was insufficient evidence to prove that a trust or constructive trust was established. The court applied the rule of Wright v. Bloom (1994), 69 Ohio St.3d 596,635 N.E.2d 31, which held that the rights of a survivor to a joint survivor ship bank account cannot be defeated by extrinsic evidence that decedent intended a different disposition absent fraud, duress, or undue influence. See, also, Veliky v. Veliky
(Apr. 2, 1998), Cuyahoga App. No. 72559, unreported.
The probate court's decision was upheld on appeal. The court found that Blake had failed to present any evidence of fraud, duress, undue influence or mistake, breach of fiduciary duty or wrongful disposition of another's property. The court noted that the only basis for Blake's claim was Langdon's statement that she intended to give the money to Chaz Bucholtz or use it for his benefit. The court reasoned that any such transfer would be a gift and that a bare promise to make a gift in futuro is unenforceable.
 [W]hile her statements demonstrate her intent to relinquish her rights in the property to Chaz, no right to the property is created in him unless the donor delivers the gift to him. Until that is done, the gift is incomplete and void.
Bucholtz.
The court was unconvinced by Blake's argument that if no constructive trust were imposed, Chaz Bucholtz might never receive any benefit from the funds if Langdon spent them for some other purpose or if, upon her death, they passed to her heirs.
 The Guardian argues that Chaz may realize no benefit from these monies if Langdon spends them for some purpose or if she dies and they pass to her heirs at law. That may be, but we must presume that Susan Hollars was aware of those risks when she made Langdon the beneficiary of her life insurance policies.
Id.
We conclude that the Bucholtz decision is applicable to the case before us. There is no evidence beyond the Coopers' bare allegations that Patricia Cooper improperly obtained title to Alfred Cooper's retirement assets. Even if he verbally expressed his intent to leave his children a beneficial interest in his retirement accounts, Alfred Cooper never manifested that intent, either in his will or by changing the beneficiary designation on his retirement accounts. Patricia Cooper's verbal promise to distribute the retirement funds to Alfred Cooper's children upon her death was an unenforceable executory promise under R.C. 2107 and, unlike the promise in Barnes, was not taken out of the statute of frauds by partial performance. Accordingly, we conclude the trial court did not err in denying the Coopers' request for a constructive trust. The judgment of the trial court is hereby affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellants her costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Probate Court Division of Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SPELLACY, P.J., and KILBANE, J., CONCUR.
 ____________________________ PATRICIA ANN BLACKMON, JUDGE
[1] The court's journal entry noted the parties' agreement that the motion to dismiss would be considered by the court as a motion for summary judgment.