UNION SAVINGS AND LOAN ASSOCIATION, Appellee,

v.

McDONOUGH et al.; Curry et al., Appellants.

[Cite as *Union S. & L. Assn. v. McDonough* (1995), 101 Ohio App.3d 273.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA94–06–136.

Decided Feb. 21, 1995.

*Baden & Jones Co., L.P.A., John B. Connaughton* and *Kevin C. Connell,* for appellee.

*Jack F. Grove,* for appellants.

WILLIAM W. YOUNG, Judge.

Defendant-appellants, J.D. and Glenda C. Curry, appeal a judgment of the Butler County Court of Common Pleas in which the court concluded that the interest of plaintiff-appellee, Union Savings and Loan Association, in two real properties superseded the Currys' equitable interest in those properties.

In August 1982, the Currys entered into a land sale contract to buy property at 2760 Tylersville Road (the "Tylersville" property). In 1990, J.D. Curry arranged for title of the property to be transferred to his uncle, Charles House. The Currys did not take title to prevent attachment of state and federal tax liens to the real estate. The Currys subsequently purchased property at 278 Morris Avenue from Buddy Garrett in New Miami, Butler County (the "Morris Avenue" property). The parties did not execute a written contract, and the Currys did not take title to this property either.

The Currys' tax liabilities and liens apparently prevented them from obtaining commercial loans. In the fall of 1991, they turned to Timothy McDonough for help. J.D. Curry had done plumbing work for McDonough's remodeling busi-

ness. For a fee of between $2,000 and $3,000, McDonough agreed to obtain a mortgage loan for the Currys using the Tylersville and Morris Avenue properties as collateral. The Currys had the title holders of the two properties transfer title to McDonough. McDonough was apparently supposed to enter into a land installment contract with the Currys, but never did. According to their arrangement, McDonough was to give the loan proceeds to the Currys. After the Currys paid their tax liens with the proceeds, McDonough was to deed the properties to them.

On November 29, 1991, McDonough obtained a $35,000 mortgage loan from Union Savings and Loan ("Union"), located in Connersville, Indiana. As collateral for the loan, McDonough mortgaged six properties with Union, including the Tylersville and Morris Avenue properties. Phil Lucas, an executive vice president for Union, testified by affidavit that the loan was approved on the basis of McDonough's financial strength and background, and the fact that McDonough had offers to purchase the properties. In fact, McDonough showed Lucas a copy of a $4,000 check drafted by J.D. Curry that purported to be earnest money for the purchase of one of the properties. McDonough had previously asked Curry to draft the check so he could show it to the bank. McDonough photocopied the check and immediately returned it to Curry, who immediately tore it up knowing that he could not cover the check.

Sometime after McDonough received the mortgage loan, he absconded to Nevada with the proceeds. Union filed a complaint in foreclosure against McDonough on January 16, 1992. The trial court granted Union's motion for default judgment against McDonough, and the properties were set for sheriff's sale on September 10, 1992.

The Currys, not named in the original foreclosure complaint, filed a motion to intervene and stay the sheriff's sale as it related to the Tylersville and Morris Avenue properties. The court originally denied the Currys' motion, but later reconsidered. On December 17, the court filed an entry allowing the Currys to intervene, and the court stayed the sheriff's sale as it related to the Tylersville and Morris Avenue properties. Union filed a second amended complaint applicable to the properties that the Currys claimed. The Currys answered and also filed a counterclaim asserting their beneficial ownership interest in the property.

On July 1, 1993, a trial was held on the Currys' ownership claim. The Currys claimed that their equitable interest in the real estate took priority over Union's rights as mortgagee. The trial court accepted the Currys' argument that McDonough held the Tylersville and Morris Avenue properties subject to an equitable trust, whereby McDonough took legal title to the properties while the Currys retained an equitable interest. However, the court concluded that there was no evidence that Union was aware of the Currys' equitable interest. The

court found that the Currys' equitable interest did not defeat Union's rights as a bona fide purchaser and mortgagee of the property.

On appeal, the Currys set forth a single assignment of error as follows:

"The trial court erred in its judgment that Union Savings' mortgage had priority over the pre-existing equitable lien of the Currys since Union Savings is not entitled to bona fide status."

The Currys argue that Union is not a bona fide purchaser of the properties in question because it had actual or constructive notice of the Currys' pre-existing equitable lien on the property.

 A brief review of equitable trusts is in order at this point. Equitable trusts are commonly divided into two categories: resulting trusts and constructive trusts. A resulting trust arises where property is transferred under circumstances that raise an inference that the transferor, or person who caused the transfer, did not intend the transferee to take a beneficial interest in the property. *Bilovocki v. Marimberga* (1979), 62 Ohio App.2d 169, 172, 16 O.O.3d 369, 371, 405 N.E.2d 337, 341. By employing its equitable powers in creating a resulting trust, a court seeks to enforce the parties' intentions. *Id.*

 A constructive trust is a trust created by operation of law against the holder of a legal right to property which that person should not, in equity and good conscience, hold or enjoy; it is a relationship associated with property subjecting the title holder to an equitable duty to convey it to another because otherwise the title holder would be unjustly enriched. Black's Law Dictionary (6 Ed.1990) 314–315; see, also, *Ferguson v. Owens* (1984), 9 Ohio St.3d 223, 9 OBR 565, 459 N.E.2d 1293. A constructive trust will not attach to property acquired by a bona fide purchaser—one who acquires title to property for value and without notice of another's equitable interest in that property. See *In re Bell & Beckwith* (C.A.6, 1988), 838 F.2d 844, 845, citing Restatement of the Law, Restitution (1937), Section 172(1).

 The trial court correctly concluded that an equitable trust existed between the Currys and McDonough. The trust arose when the Currys caused the properties to be transferred to McDonough with the intention of maintaining their beneficial interest. As between McDonough and the Currys, the court could also have concluded that a constructive trust was appropriate, since McDonough would be unjustly enriched if he were allowed to keep the property. However, the issue is whether the trial court erred in refusing to impose a constructive trust between Union and the Currys. That issue, in turn, depends upon whether or not Union knew or should have known of the Currys' beneficial interest in the real estate.

There is no evidence to support the Currys' contention that Union had actual knowledge of their equitable interest in the properties. However, the Currys also argue that Union had constructive notice. The Currys claim that Union did not follow prudent loan procedures. For example, they complain that Union should have inquired about how McDonough acquired title to the property. The Currys point out that Glenda Curry was present at the Tylersville property and J.D. Curry was present at the Morris Avenue property when an individual hired by Union appraised those properties. They assert that the appraiser never inquired as to their interest, if any, in the properties.

The Currys argue in effect that Union must bear the consequences of McDonough's malfeasance because it failed to discover their equitable interest in the property. However, the Currys' plan to obtain financing required that their equitable interest remain secret. The fact remains that without the Currys' active participation, McDonough could not have mortgaged their property. Union did not owe the Currys a duty to investigate potential equitable interests in the properties that the Currys themselves had a vested interest in hiding.

The trial court also considered "newly discovered evidence" the Currys submitted after the trial. This evidence included recorded instruments showing that Union's attorney, J.B. Connaughton, had been a titled owner of unrelated property with McDonough. Connaughton and McDonough eventually sold that property to Union Executive Vice–President Phil Lucas. The Currys suggest that since these individuals have had business relationships in the past they may have engaged in self-dealing by ignoring the Currys' interest in the real estate in question. However, this supposition is unsupported by any evidence.

McDonough defrauded the Currys. This court can empathize with the plight they placed themselves in by trusting McDonough. However, there is insufficient evidence that Union knew or should have known of their interest in the property. The trial court did not abuse its discretion in finding that Union's mortgage took priority over their equitable interest.

*Judgment affirmed.*

JONES, P.J., and KOEHLER, J., concur.

FRED E. JONES, P.J., retired, of the Twelfth Appellate District, sitting by assignment.