In re Wilma L. **BUSHEY**, Debtor.

Kathryn A. **BELFANCE**, Trustee, Plaintiff–Appellant,

v.

Wilma L. **BUSHEY** and Sharon M. Jones, a.k.a. Sharon M. Nolan, Defendants–Appellees.

BAP No. 97–8015.

United States Bankruptcy Appellate Panel of the Sixth Circuit.

Argued May 7, 1997.

Decided July 21, 1997.

---

Eve V. Belfance, Belfance & Belfance, Akron, OH (Kathryn A. Belfance, Eve V. Belfance, Belfance & Belfance, on brief), for plaintiff–appellant.

David C. Weick, Weick & Weick, Cuyahoga Falls, OH, Chris Manos, Hyatt Legal Services, Akron, OH (David C. Weick, Chris Manos, on brief), for Appellee.

Before: LUNDIN, RHODES, and WALDRON, Bankruptcy Appellate Panel Judges.

## OPINION

On the ground that the Chapter 7 trustee lacked standing under 11 U.S.C. § 544(b) and Ohio fraudulent conveyance law, the bankruptcy court granted summary judgment to the defendants in this action to avoid the transfer of a residence by the debtor to her daughter. Because the bankruptcy court applied the wrong legal standard to determine standing to avoid a fraudulent conveyance under 11 U.S.C. § 544(b) and Ohio law, we reverse the grant of summary judgment and remand for further proceedings.

## I. ISSUES ON APPEAL

There are four issues: (1) Whether the standing of a trustee to avoid a fraudulent conveyance under 11 U.S.C. § 544(b) is limited by the condition that the claim used by the trustee as the predicate for the avoidance action must be identical to a claim in the bankruptcy case; (2) whether a creditor with a continuously open credit card account is an "existing" creditor under OHIO REV.CODE ANN. §§ 1336.04, 1336.06, and 1336.07 (Anderson 1979 & Supp.1986) (repealed),[1] notwithstanding that the account balance passed through zero between the challenged transfer and the bankruptcy filing; (3) whether a creditor with a continuously open credit card account is a "future" creditor under OHIO REV.CODE ANN. § 1336.06 and § 1336.07 notwithstanding that the account balance passed through zero between the challenged transfer and the bankruptcy filing; and (4) whether a constructive or resulting trust is an available remedy under Ohio law in this litigation.

1. Ohio adopted the Uniform Fraudulent Transfer Act ("UFTA") effective September 28, 1990. In an earlier opinion in this adversary proceeding, the bankruptcy court held that this case is governed by former law, Ohio's version of the Uniform Fraudulent Conveyance Act, OHIO REV.CODE ANN. §§ 1336.01—1336.09 (Anderson 1979) (repealed). *Belfance v. Bushey (In re Bushey)*, Ch. 7 Case No. 94–51481, Adv. No. 95–5005, slip op. at 6–7 (Bankr.N.D.Ohio Dec. 7, 1995).

2. The Notice of Appeal states that the trustee appeals the bankruptcy court's judgment of September 30, 1996. That judgment both granted appellees' motion for summary judgment and denied the trustee's cross motion for summary

## II. JURISDICTION AND STANDARD OF REVIEW

The United States District Court for the Northern District of Ohio authorized appeals to the Bankruptcy Appellate Panel of the Sixth Circuit and transferred this appeal to the BAP with the consent of all parties. The BAP has jurisdiction to hear the appeal of a final order of the bankruptcy court. 28 U.S.C. § 158(a).

 A final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S.Ct. 1494, 1497, 103 L.Ed.2d 879 (1989) (citations and internal quotations omitted). The grant of summary judgment to the defendants in this adversary proceeding was a final, appealable order.[2]

The grant of summary judgment is reviewed *de novo*. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1176 (6th Cir.1996); *Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 88–9 (6th Cir.1993). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "In determining whether the non-moving party has raised a genuine issue of material fact, '[t]he evidence of [appellant] is to be believed, and all justifiable inferences are to be drawn in [its] favor.'" *PSI Repair Servs., Inc. v. Honeywell, Inc.*, 104 F.3d 811, 814 (6th Cir.1997) (quoting *Eastman Kodak Co.*

judgment. The denial of a motion for summary judgment is interlocutory, and generally not appealable. *See, e.g., Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 301 (9th Cir.1989); *T & B Scottdale Contractors, Inc. v. United States*, 815 F.2d 1425, 1428 (11th Cir.1987). The trustee has not requested leave to appeal the denial of her motion for summary judgment. To the extent that the notice of appeal is deemed a request for leave to appeal the denial of summary judgment, such request is denied. No controlling issues of law exist apart from those addressed in connection with the grant of summary judgment, and immediate appeal would not materially advance the termination of this litigation.

*v. Image Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 2076, 119 L.Ed.2d 265 (1992)). *See also Brooks v. American Broadcasting Cos.*, 932 F.2d 495, 500 (6th Cir.1991). "When a court reviews an issue under a de novo standard of review, the court is determining questions of fact and law as though the reviewing court was the original trial court." *Razavi v. Commissioner*, 74 F.3d 125, 127 (6th Cir.1996).

## III. STATEMENT OF FACTS

Wilma L. Bushey filed a Chapter 7 petition on September 23, 1994. The statements and schedules revealed her residence as 888 Blanding Avenue, Akron, Ohio, but no interest in real property was listed as an asset. The trustee inquired about the Blanding Avenue property at the meeting of creditors. Debtor explained that she lived at the property since its transfer to her daughter, Sharon M. Nolan, on April 8, 1986. Further investigation established that debtor's interest in the property had been transferred to her daughter for $1.00, at the insistence of debtor's husband.[3] Debtor professes not to know why her husband insisted on the transfer to their daughter. Debtor pays Nolan no rent. Nolan does not reside at the property, although as an adult she lived there briefly during a divorce.

At the 1986 transfer to Nolan, the property was mortgaged with less than two years of payments remaining. After the conveyance, debtor and her husband continued to pay the mortgage, insurance and taxes. After the final mortgage payment, Nolan began to pay the property taxes. There is conflicting evidence regarding who now pays for insurance.

On March 28, 1988, debtor's husband passed away. Debtor used life insurance proceeds to pay off debt. Among the creditors paid in full in 1988 were Citibank Visa and Citibank MasterCard. Each was owed a debt on a revolving charge or open account.

In 1986, at the time the debtor transferred the property to her daughter, the Citibank MasterCard account existed and had a balance due.[4] Citibank MasterCard is a creditor in this Chapter 7 case, based on its continuous credit relationship with the debtor.

The Citibank Visa account traces back at least to its payment in full in 1988. Citibank Visa is a creditor in this bankruptcy case. The Visa account number changed sometime during 1992, but there is no evidence of any break in the credit relationship between Visa and the debtor.

The trustee brought this action under 11 U.S.C. § 544(b) to avoid the 1986 transfer of the property as a fraudulent conveyance under OHIO REV.CODE ANN. §§ 1336.04, 1336.06 and 1336.07. The trustee asked that a constructive or resulting trust be imposed on the property. The trustee and defendants filed several motions for summary judgment.[5] The bankruptcy court eventually granted summary judgment to the defendants, on the ground that the trustee lacked standing to maintain this action.

The bankruptcy court reasoned that to qualify as an "existing creditor" under Ohio fraudulent conveyance law and 11 U.S.C. § 544(b) there must be a creditor in the bankruptcy case that has "current claims against the [debtor] that were owing at the time of the alleged fraudulent transfer in 1986." *Belfance v. Bushey (In re Bushey)*, Ch. 7 Case No. 94–51481, Adv. No. 95–5005, slip op. at 6 (Bankr.N.D.Ohio Sept. 30, 1996).

---

3. The property was purchased by debtor and her husband in 1957 and was the family home for nearly 30 years. In 1978, debtor's husband quit claimed his interest in the property to debtor, admittedly to protect the property from the claims of creditors.

4. The disputed evidence about this account—described by the debtor as "a running thing" with a "small" balance in 1986—is resolved for purposes of this summary judgment in the light most favorable to the trustee's position.

5. On December 7, 1995, on the first set of cross motions for summary judgment, the bankruptcy court ruled that the trustee's action was not barred by the statute of limitations, OHIO REV. CODE ANN. § 1336.09, because Ohio applies a discovery-of-the-fraud rule, and the allegedly fraudulent conduct was not discovered until the meeting of creditors in debtor's Chapter 7 case on November 22, 1994. *Belfance v. Bushey (In re Bushey)*, Ch. 7 Case No. 94–51481, Adv. No. 95–5005, slip op. at 7–8 (Bankr.N.D.Ohio Dec. 7, 1995). No appeal was taken from that judgment.

Although at least one creditor listed in debtor's bankruptcy schedules, Citibank Master-Card, was also a creditor in 1986, that account balance was paid in full in 1988. That the debtor subsequently incurred debt on the same account with MasterCard, concluding with a balance due in her Chapter 7 case, was not sufficient "to invoke ... § 544(b) in relation to [OHIO REV.CODE ANN.] § 1336.04." *Id.* at 7.

The bankruptcy court rejected the trustee's actions as to "future" creditors under §§ 1336.06 and 1336.07 on similar reasoning. The court held that the trustee must identify a future creditor "harmed" by the conveyance. Citibank Visa and Citibank MasterCard, creditors relied upon by the trustee, failed this test because their account balances were reduced to zero sometime in 1988 and both creditors received periodic payments (toward ever increasing balances) between 1988 and the bankruptcy filing in 1994.

Lastly, the bankruptcy court found the trustee's request for a constructive trust or a resulting trust "unsupportable in light of her failure to establish her right to pursue any claim under [OHIO REV.CODE ANN.] §§ 1336.04, 1336.06 or 1336.07." *Id.* at 8.

The trustee appeals the grant of summary judgment.

## IV. DISCUSSION

### A. Standing Under Federal Law: § 544(b).

Section 544(b) of the Bankruptcy Code confers upon a trustee the powers of a "creditor" with an allowable unsecured claim to "avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law...." 11 U.S.C. § 544(b).[6] It is often said of § 544(b) that the trustee "stands in the shoes" of the creditor, subject to any defenses that could be asserted against the creditor. *See, e.g., Sender v. Simon,* 84 F.3d 1299, 1304 (10th Cir.1996);

*Rieser v. Reno (In re Douglas),* 190 B.R. 831, 836 (Bankr.S.D.Ohio 1995).

The plain language of § 544(b) contains four requirements:

1. A creditor,
2. holding an allowable unsecured claim; and
3. a transfer of an interest of the debtor in property,[7]
4. that is voidable under applicable (here, Ohio) law.

Citibank MasterCard and Citibank Visa are creditors holding allowable unsecured claims in this bankruptcy case. To the extent the bankruptcy court imposed additional "federal" requirements with respect to the kind of creditor that satisfies the allowable unsecured creditor requirement in § 544(b), the bankruptcy court exceeded the plain statutory language.

Appellees interpret the bankruptcy court to hold that a Chapter 7 trustee's "standing" under § 544(b) is not co-extensive with the "standing" of the creditor into whose shoes the trustee would step. Rather, argue Appellees, federal law (§ 544(b) itself) imposes an additional requirement that the *claim* asserted in the bankruptcy case must be identical to the claim used by the trustee as the basis for the avoidance action under "applicable law."

Section 544(b) does not impose any additional requirement with respect to the nature or origin of the allowed unsecured claim used by the trustee. "[S]tatutory interpretation begins with the language of the statute itself." *Pennsylvania Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 557–58, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990) (citation omitted). Departure from the literal meaning of a statute is appropriate only where "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v.*

---

**6.** 11 U.S.C. § 544(b) provides in full:

The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.
11 U.S.C. § 544(b).

**7.** This element is not in dispute with respect to the 1986 transfer of the debtor's interest in her homestead.

*Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (citations and internal quotations omitted). No departure from the plain language of § 544(b) of the sort argued by Appellees is warranted.

█ Section 544(b) imposes only one "standing" requirement that is independent of the state law cause of action asserted by the trustee: the creditor must hold an allowable unsecured claim, determined under the allowance rules of the Bankruptcy Code. The focus of § 544(b) is on the identity of the *creditor*, not on the historical relationship between that creditor's claim and the debtor. If a creditor holds an allowable, unsecured claim in the bankruptcy case, the first and second elements of § 544(b) are satisfied and the inquiry shifts: Would this creditor have standing under "applicable law" to prosecute the avoidance action brought by the trustee? In this case, Ohio law governs whether Citibank MasterCard or Citibank Visa has standing to pursue a fraudulent conveyance under OHIO REV.CODE ANN. §§ 1336.04, 1336.06 and 1336.07. Any suggestion to the contrary by the bankruptcy court was error.

**B. "Present" or "Existing" Creditors: OHIO REV.CODE ANN. § 1336.04.**

█ Section 1336.04 proscribed conveyances resulting in insolvency:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation incurred without fair consideration.

OHIO REV.CODE ANN. § 1336.04 (Anderson 1979) (repealed). "Creditor" was defined by Ohio law as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent."

OHIO REV.CODE ANN. § 1336.01(C) (Anderson 1979) (repealed). In the context of § 1336.04, "creditors" means creditors having a claim against the transferor at the time of the challenged transfer. *See SPC Plastics Corp. v. Griffith (In re Structurlite Plastics Corp.),* 193 B.R. 451, 458 (Bankr.S.D.Ohio 1995) (OHIO REV.CODE ANN. § 1336.04 "refers only to 'creditors' while the other constructive fraud provisions speak not only of 'creditors', but also of persons who became creditors after the transaction complained of"); *MacQueen v. Dollar Sav. Bank Co.,* 133 Ohio St. 579, 15 N.E.2d 529 (1938). The creditors that satisfy § 1336.04 are commonly referred to as "existing" or "present" creditors.[8]

The bankruptcy court correctly found, for purposes of summary judgment, that Citibank MasterCard has a "current claim" against this debtor and that Citibank MasterCard was owed money in 1986 at the time of the property transfer.[9] However, the bankruptcy court disqualified Citibank MasterCard from being an "existing" creditor for purposes of § 1336.04 because the open account was paid to a zero balance in 1988 and the debtor "incurred new debt" thereafter.

The "new debt" characterization by the bankruptcy court to describe the positive balance on the MasterCard that accumulated after the account was paid to zero in 1988 is misleading in this context. There is no evidence that the "new debt" was anything but a balance due on the same open account between the debtor and MasterCard that existed in 1986 at the time of the transfer and that functioned continuously between 1986 and the bankruptcy filing in 1994.

Equating the fluctuating balance on an open account that passes through zero to the creation of a "new debt" reads into Ohio fraudulent conveyance law an "exception" to the "existing" creditor concept that has not been adopted by any reported Ohio decision. Because the Ohio Supreme Court has clearly

---

**8.** OHIO REV.CODE ANN. §§ 1336.06 and 1336.07, discussed below, refer to "present and future creditors." No Ohio authority has been found to suggest that "present" and "existing" are not synonymous in this context. *See* BLACK'S LAW DICTIONARY 574, 1183 (6th ed.1990) (the adjective "present" means "now existing;" "exist" means "to be in present force, ... or effect at a given

time, as in speaking of existing contracts, ..., debts ...").

**9.** The bankruptcy court also found that Citibank Visa had claims against the debtor at both relevant times. Our review of the record fully supports the bankruptcy court's conclusion with respect to Citibank MasterCard.

signaled—without the exception adopted by the bankruptcy court in this case—that an open account is an "existing creditor" for purposes of § 1336.04, we hold that an "open account" functioning continuously between the time of a transfer and the filing of a fraudulent conveyance action is an "existing" creditor for purposes of § 1336.04 notwithstanding that the account had a zero balance at some moment during the credit relationship.

In *MacQueen v. Dollar Savings Bank Co.*, 133 Ohio St. 579, 15 N.E.2d 529 (1938), an assignee for the benefit of creditors of an insolvent corporation sought to recover an insurance policy that belonged to the corporation but had been pledged by a corporate principal to secure personal debt. The issue arose whether there was a "creditor" that held a claim against the corporation at the time of the transfer whose standing the assignee could assert. The Supreme Court of Ohio held that the holder of an open account is an "existing" creditor:

> [A] voluntary transfer will not be set aside for merely constructive fraud at the instance of a subsequent creditor. *Pfisterer v. Toledo, Bowling Green & Southern Traction Co.* [89 Ohio St. 172, 106 N.E. 18, 20 (Ohio 1913) ]; *Evans v. Lewis*, 30 Ohio St. 11 [ (1879) ]; *Webb's Adm'r v. Roff*, 9 Ohio St. 430 [ (1859) ]. *However, in view of the evidence in the record to the effect that some of the creditors represented by the plaintiff assignee had open or running accounts at the time of the alleged fraudulent transfer and continuously since, the plaintiff assignee will be treated as representing existing not subsequent creditors.*

*Id.*, 15 N.E.2d at 531 (emphasis added).

It is in the nature of an open account that its balance fluctuates to (and through) zero yet no "exception" to the existing creditor definition for open accounts that have had zero balances appears in *MacQueen* or in any other Ohio fraudulent conveyance case we have found. *MacQueen*'s characterization of running or open accounts as "existing" creditors for purposes of OHIO REV.CODE ANN. § 1336.04 has been applied by bankruptcy courts under the Uniform Fraudulent Conveyance Act in the context of unraveling leveraged buyouts notwithstanding that account balances may have been reduced to zero during the LBO transaction. *See SPC Plastics Corp. v. Griffith (In re Structurlite Plastics Corp.)*, 193 B.R. 451 (Bankr. S.D.Ohio 1995); *Aluminum Mills Corp. v. Citicorp N.A., Inc. (In re Aluminum Mills Corp.)*, 132 B.R. 869 (Bankr.C.D.Ill.1991). *See also Brandt v. Hicks, Muse & Co. (In re Healthco Int'l, Inc.)*, 195 B.R. 971 (Bankr. D.Mass.1996); *Chester B. Brown Co. v. Goff*, 89 Idaho 170, 403 P.2d 855 (1965). *But see Unsecured Creditors' Comm. v. Banque Paribas (In re Heartland Chemicals, Inc.)*, 103 B.R. 1012 (Bankr.C.D.Ill.1989); *Ohio Corrugating Co. v. DPAC, Inc. (In re Ohio Corrugating Co.)*, 91 B.R. 430 (Bankr.N.D.Ohio 1988).

In an open account context, the "existing" creditor relationship is not defined by the balance on the account; it is the availability and continuous use of the credit facility that determines whether an appropriate creditor interest is present against which to measure the propriety of a conveyance. Every change in the balance of an open account—including a change to or from "zero"—is a "new balance," not a "new debt" for fraudulent conveyance purposes. Reduction to a zero balance of an open account, no other facts appearing, tells creditors nothing about the underlying financial condition of the borrower. Any borrower could engineer the defeat of all "existing" creditors by serially paying account balances to zero ("account kiting?") then immediately rebuilding those balances. The continuous nature of the risk faced by the creditor in an open account relationship is the defining characteristic of an "existing" creditor, not the account balance at any moment during that relationship.

Other interpretations of the bankruptcy court's decision are plausible but none produces a different outcome on this appeal. If the bankruptcy court meant "current claims . . . owing at the time of the alleged fraudulent transfer" to mean that the underlying contractual debtor/creditor relationship must remain the same, then the bankruptcy court misapplied its own interpretation of Ohio fraudulent conveyance law. The Citibank MasterCard account was the same, continu-

ously open account relationship between the transfer in 1986 and bankruptcy in 1994. If "contractual identity" is what the bankruptcy court required, then its conclusion that the MasterCard account did not satisfy this rule was a factual error.

If the bankruptcy court intended that the identical account balance must be present in bankruptcy and at the time of the challenged transfer, then the court embraced a profound new limitation on Ohio fraudulent conveyance law that is nearly as broad as the cause of action itself. No debtor/creditor relationship in which payments were made, new credit was extended or interest or other charges accrued between the time of a transfer and of a challenge to that transfer could form the basis for a fraudulent conveyance action under Ohio Rev.Code Ann. § 1336.04. Every active, open or running account would fail this test. An "identical claim" requirement would turn Ohio Rev.Code Ann. § 1336.04 on its head. By increasing or decreasing its debt after a fraudulent transfer, any account debtor would insulate its own fraud from challenge by the very lenders it continues to defraud. There is no suggestion in the Ohio cases cited by Appellees that the existing creditor requirement in Ohio Rev.Code Ann. § 1336.04 is so narrow.

Finally, if the bankruptcy court meant only that "some" portion of the balance due at bankruptcy must have been owing continuously since the challenged transfer, then the court's new rule becomes arbitrary on inspection. The MasterCard account balance owing at the moment of transfer in 1986 is irretrievably lost in the stream of payments and charges during the decade between transfer and bankruptcy. Such would be true of every active open account over time. Given the fungibility of balances in an open account relationship, when is one balance completely "replaced" by another? An unpaid peppercorn in a long term debtor/creditor relationship might satisfy this interpretation of the bankruptcy court's standing rule but a multimillion dollar balance on an account that passed through zero for the nanosecond required by a computerized account register would not. The timing of items in transit, the due dates of charges on account, or the accident of posting, billing and collecting entries on a ledger would determine standing under Ohio Rev.Code Ann. § 1336.04, notwithstanding that the underlying risks and debtor/creditor relationship remained unchanged. We do not believe that the Supreme Court of Ohio would adopt such an arbitrary limitation on the "existing" creditor concept.

The continuous open account between this debtor and Citibank MasterCard satisfies the "existing" creditor requirement of Ohio Rev. Code Ann. § 1336.04 and vests the Chapter 7 trustee with standing under 11 U.S.C. § 544(b).

### C. Present and Future Creditors: Ohio Rev.Code Ann. §§ 1336.06 and 1336.07.

Ohio Rev.Code Ann. §§ 1336.06 and 1336.07 [10] conferred standing to pursue a fraudulent conveyance on "present" and "future" creditors. The bankruptcy court denied the trustee standing under these provisions because she failed to "establish that an identifiable future creditor was harmed by the challenged transaction." *Belfance v. Bushey (In re Bushey)*, Ch. 7 Case No. 94–51481, Adv. No. 95–5005, slip op. at 7 (Bankr. N.D.Ohio Sept. 30, 1996). The bankruptcy court found that Citibank MasterCard and Citibank Visa were not future creditors "in view of the full payment of [Citibank Visa and Citibank MasterCard] and the periodic

---

10. At the time of the transfer, §§ 1336.06 and 1336.07 provided:

Every conveyance made and every obligation incurred without fair consideration, when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

Ohio Rev.Code Ann. § 1336.06 (Anderson 1979) (repealed).

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present or future creditors.

Ohio Rev Code Ann. § 1336.07 (Anderson 1979) (repealed).

payments to those creditors between 1988 and 1994. . . ." *Id.*

For the same reasons that Citibank MasterCard is an "existing" creditor for purposes of OHIO REV.CODE ANN. § 1336.04, Citibank MasterCard is also a "present" creditor for purposes of OHIO REV.CODE ANN. §§ 1336.06 and 1336.07. The bankruptcy court's contrary holding was in error.

The bankruptcy court's disqualification of Citibank Visa as a "future" creditor was also a misapplication of Ohio law. "Future" creditor is not separately defined by Ohio law. A common sense definition is an entity with a claim arising after the challenged transfer, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent. *See* OHIO REV.CODE ANN. § 1336.01(C) (Anderson 1979) (repealed) (defining "creditor"). Under OHIO REV.CODE ANN. §§ 1336.06 and 1336.07, a bankruptcy trustee can step into the shoes of any creditor that holds an allowable unsecured claim that arose after the challenged transfer. Rare indeed will be the bankruptcy case in which a trustee cannot identify such a creditor. Citibank Visa was a future creditor.

According to the debtor's deposition, the open account relationship between the debtor and Citibank Visa began sometime after 1986, but before 1988. (Tr. of Dep. of Wilma L. Bushey, June 22, 1995, at 17–21.) An open credit card account creates a debtor/creditor relationship for purposes of Ohio fraudulent conveyance law and Citibank Visa was a "future" creditor with respect to the 1986 transfer of property by the debtor.

That a future creditor received payments, even substantial payments, prior to commencement of the avoidance action, does not defeat standing for purposes of OHIO REV. CODE ANN. §§ 1336.06 and 1336.07. No Ohio case has been cited by Appellees and the court has found none for the proposition that fluctuations in the balance due on an open account would defeat the standing of a future creditor. The proposition itself is not logical. By definition, an open account creditor is a continuously replenishing "future" creditor— even if the underlying balance passes through zero—if subsequent extensions of credit produce a balance due at the filing of a fraudulent conveyance action. The trustee has standing under OHIO REV.CODE ANN. §§ 1336.06 and 1336.07, based on the debtor's open accounts with Citibank MasterCard and Citibank Visa.

### D. Constructive Trusts and Resulting Trusts.

The bankruptcy court rejected the trustee's request that an equitable trust be imposed against the property for the benefit of creditors because such a trust was "unsupportable in light of [the trustee's] failure to establish her right to pursue any [fraudulent conveyance] claim." *Belfance v. Bushey (In re Bushey)*, Ch. 7 Case No. 94–51481, Adv. No. 95–5005, slip op. at 8 (Bankr.N.D.Ohio Sept. 30, 1996). The bankruptcy court also stated that the trustee was foreclosed from such relief absent evidence of "actual fraud." *Id.* at 7–8. These conclusions are not consistent with Ohio law.

Under Ohio law equitable trusts are commonly divided into two categories— resulting trusts and constructive trusts:

> A resulting trust arises where property is transferred under circumstances that raise an inference that the transferor, or person who caused the transfer, did not intend the transferee to take a beneficial interest in the property. [citation omitted.] By employing its equitable powers in creating a resulting trust, a court seeks to enforce the parties' intentions.
>
> A constructive trust is a trust created by operation of law against the holder of a legal right to property which that person should not, in equity and good conscience, hold or enjoy; it is a relationship associated with property subjecting the title holder to an equitable duty to convey it to another because otherwise the title holder would be unjustly enriched. [citations omitted.]

*Union Sav. & Loan Ass'n v. McDonough,* 101 Ohio App.3d 273, 655 N.E.2d 426, 428 (1995). *See also First Nat. Bank of Cincinnati v. Tenney,* 165 Ohio St. 513, 138 N.E.2d 15 (1956).

■] Actual fraud is not a prerequisite to the imposition of an equitable trust under Ohio law:

> Where it is inequitable that a person retain title to property, a constructive trust may be imposed even in the absence of fraud where there exists a legal principle which can serve as a basis for equitable relief. [citation omitted.]

*Robbins v. Warren,* No. CA95–11–200, 1996 WL 227477 at *3 (Ohio App. May 6, 1996) (citing *Ferguson v. Owens,* 9 Ohio St.3d 223, 459 N.E.2d 1293 (1984); *Henkle v. Henkle,* 75 Ohio App.3d 732, 600 N.E.2d 791 (1991)). *See also Gabel v. Richley,* 101 Ohio App.3d 356, 655 N.E.2d 773 (1995).

■] A constructive trust is a recognized remedy for a fraudulent conveyance, *see In re D.H. Overmyer Telecasting Co.,* 23 B.R. 823 (Bankr.N.D.Ohio 1982), *aff'd,* 53 B.R. 963 (N.D.Ohio 1984), *aff'd,* 787 F.2d 589 (6th Cir.1986); *Dolce v. Lawrence,* No. 95–2–038, 1995 WL 815362 (Ohio App. Dec. 22, 1995), and may be imposed to prevent unjust enrichment. *Robbins v. Warren,* 1996 WL 227477 at *3 ("Where unjust enrichment is found, it may serve as grounds for the operation of a constructive trust.") (citing *Ferguson v. Owens,* 9 Ohio St.3d 223, 459 N.E.2d 1293 (1984); *Henkle v. Henkle,* 75 Ohio App.3d 732, 600 N.E.2d 791 (1991)). A resulting trust is used by the Ohio courts under similar circumstances. *See John Deere Indus. Equipment Co. v. Gentile,* 9 Ohio App.3d 251, 459 N.E.2d 611 (1983); *see also Shorten v. Drake,* 38 Ohio St. 76 (1882); *Creed v. Lancaster Bank,* 1 Ohio St. 1 (1852). On remand, both remedies can be considered by the bankruptcy court.

### V. CONCLUSION

The grant of summary judgment to the defendants is REVERSED. This adversary proceeding is REMANDED for further proceedings in accordance with this opinion.