*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name:  07b0005n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re:   CRESCENT COMMUNITIES, INC., ) | |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| ELEANOR BEAVERS HAYNES, ) | |
| ) | |
| Plaintiff-Appellee, ) | No. 06-8022 |
| ) | |
| v. ) | |
| ) | |
| JACK D. HOLSTEIN, ) | |
| ) | |
| Defendant-Appellant. ) | |
| _____ ) | |

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Eastern Division, at Columbus.
No. 02-50593, 02-2402.

Argued: November 8, 2006

Decided and Filed:  February 22, 2007

Before: LATTA, SCOTT, and WHIPPLE, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** J. Matthew Fisher, ALLEN, KUEHNLE & STOVALL, Columbus, Ohio, for Appellant. Melissa Feldman Michalsky, LUPER NEIDENTHAL & LOGAN, Columbus, Ohio, for Appellee. **ON BRIEF:**  J. Matthew Fisher, ALLEN, KUEHNLE & STOVALL, Columbus, Ohio, for Appellant.  Melissa Feldman Michalsky, Frederick M. Luper, LUPER NEIDENTHAL & LOGAN, Columbus, Ohio, for Appellee.

————————————————

## OPINION

————————————————

JOSEPH M. SCOTT, JR., Bankruptcy Appellate Panel Judge. This is an appeal from an order of the bankruptcy court avoiding the transfer of real and personal property to the appellant as a fraudulent transfer, and an order imposing a lien upon the property for the benefit of the appellant in the amount of the purchase price paid by him.

## I.   ISSUES ON APPEAL

1.      Whether the bankruptcy court erred in granting summary judgment in favor of the bankruptcy trustee and avoiding the transfer of property to the appellant as a fraudulent transfer under Ohio law.

2.      Whether the bankruptcy court erred in not including interest in the value of the lien granted to the appellant.

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit ("BAP" or "Panel") has jurisdiction to hear and decide this appeal. 28 U.S.C. § 158(b)(1). The United States District Court for the Southern District of Ohio has authorized appeals to the BAP, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A final order of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). An order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citation omitted). Since the bankruptcy court decided all of the issues raised in the adversary complaint, review by the Panel is appropriate.

The bankruptcy court's grant of summary judgment to the trustee is a final appealable order reviewed de novo. *See Belfance v. Bushey ( In re Bushey )*, 210 B.R. 95, 98 (B.A.P. 6th Cir. 1997). *De novo* means that the appellate court determines the law independently of the trial court's determination. *Corzin v. Fordu ( In re Fordu )*, 209 B.R. 854, 857 (B.A.P. 6th Cir. 1997).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Fed. R. Civ. P. 56(c). A material fact is that which is outcome-determinative. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In order to prevail, the movant must prove all elements of the cause of action or defense. *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). Once that burden is met, however, the opposing party must set forth specific facts showing there is a genuine issue for trial. *Liberty Lobby,* 477 U.S. at 249-51; *60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). Inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88, 106 S. Ct. 1348, 1356 (1986).

In cases such as this, where the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law. *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 463 n.6 (6th Cir. 1999). That both parties simultaneously argue there are no genuine issues of material fact does not in itself establish that a trial is not necessary, and that one party has failed to sustain its burden under Federal Rule of Civil Procedure 56 does not automatically entitle the opposing party to summary judgment. *See* 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2720 (1998).

### III.   FACTS

On August 14, 2003, the bankruptcy court entered its Opinion and Order on Cross Motions for Summary Judgment ("Partial Summary Judgment") and stated that the following facts are not disputed. The parties' briefs on appeal also do not dispute these facts:

In January of 1996, Crescent Communities, Inc. ("Crescent") through its president, Michael J. Young ("Young"), purchased 28.368 acres of real estate located in Montgomery County, Ohio, subject to a purchase money mortgage. Crescent intended on developing the real property as a residential community. On February 12, 1998, the real property went into foreclosure as a result of Crescent's failure to pay the mortgage. The real property was appraised at $240,000.00 in the foreclosure proceeding and was sold at sheriff's sale on August 7, 1999.

On or about August 13, 1999, [Jack D.] Holstein executed a certain real estate purchase contract with option to repurchase (the "Contract"). At the time of execution of the Contract, the real property was subject to an order authorizing the sale of the property at foreclosure sale, and an auction had taken place where there was a successful third party bidder. Pursuant to the Contract, Holstein agreed to pay the amount necessary for Crescent's right of redemption to be exercised, including interest through the date of payment. Holstein agreed to pay the purchase price directly to Crescent or on Crescent's behalf to an appropriate authority of Montgomery County, Ohio. In no event, however, was the purchase price to exceed $215,000.000.

The Contract provided that, at closing, Crescent would deliver to Holstein those documents, authorities, records, building plans, site plans, etc., that would be helpful in connection with the ownership, development or resale of the real property. Pursuant to paragraph three of the Contract, Crescent was given the right to repurchase the real property from Holstein. The option to repurchase was to be exercised at any time on or before the sixtieth day following the closing by delivering to Holstein an exercise price. The exercise price was determined as $240,000.00 within fourteen days of closing, $250,000.00 within fourteen to thirty days after closing, and $275,000.00 within thirty to sixty days after closing.

. . . Young and Crescent state that Holstein had invested in Crescent to help with capital requirements and management of the business in 1997. Holstein had agreed to personally guarantee certain development loans required for development and to aid Young in the management of business. In consideration of these things, Crescent agreed to grant Holstein an eighteen percent (18%) interest in Crescent, represented by a share certificate of ninety (90) shares. . . . In response, Holstein claims that at no time was he issued valid shares in Crescent. . . .

The closing occurred on August 13, 1999. At the closing, Crescent, through Young, executed and delivered the general warranty deed to Holstein. Holstein gave to Young, for Crescent, an official check made payable to the Montgomery County, Ohio, Clerk of Courts in the amount of $210,000.00. That amount was the amount necessary to redeem the real property from the sheriff's sale. At the end of the closing, Young took the official check and the general warranty deed to record them at the courthouse. Young deposited the official check with the Montgomery County, Ohio, Clerk of Courts. Young did not get the general warranty deed recorded.

. . . Young claimed that the general warranty deed was rejected from being recorded because it contained a faulty description. Young further claimed that he and Holstein met with Crescent's surveyor and engineer, Luis G. Riancho, who had

performed previous services for Crescent. He, according to Young, refused to correct the legal description until he was paid $6,000.00 of over $20,000.00 previously owed for his surveying services. . . . In response, Holstein fails to comment upon or refute Young's claims regarding the meeting with Riancho.

In April of 2000, Holstein filed complaints in Franklin County and Montgomery County, Ohio, for specific performance under the Contract and for injunctive relief to prevent the sale of the real property. The Franklin County, Ohio, Common Pleas Court complaint was dismissed, and the Montgomery County, Ohio, Common Pleas Court complaint was transferred to the Franklin County, Ohio, Common Pleas Court. On January 17, 2002, Crescent filed its Chapter 7 bankruptcy proceeding.

Holstein filed a motion to lift stay to allow the Franklin County, Ohio Court of Common Pleas ("State Court") to decide the ownership issue of the real estate. On April 10, 2002, this Court entered an order granting the requested relief from stay. The Trustee [of Crescent's bankruptcy estate, Eleanor Beaver Haynes,] then moved the State Court to be made a party, but said motion was denied. On July 11, 2002, a State Court magistrate issued a decision and found that the property belonged to Holstein. The State Court magistrate found that the real property had been [Holstein's] since August 13, 1999. Over objections by Young and Crescent, the State Court judge adopted the magistrate's decision through a Journal Entry Overruling Defendant's Objections to Magistrate's Decision filed July 25, 2002, and Adopting Magistrate's Decision filed July 11, 2002 ("Journal Entry"). Young and Crescent filed a notice of appeal, and the appeal is pending before the Tenth District Court of Appeals, Franklin County, Ohio.[1]

In the Journal Entry, the State Court judge made the following statement:

> Defendants [referring to Crescent and Young] apparently continue to miss the distinction between trustee's *ownership* powers in the bankruptcy estate, which arise in the property of the debtor as a matter of law immediately upon the filing of a bankruptcy petition, and the trustee's *avoidance* powers, which permit the trustee to avoid certain transfers that may have been made prior to the filing of the petition. 11 U.S.C. [§] 544. This court has ruled that Plaintiff [referring to Holstein] is the legal and equitable owner of the disputed property . . . .

. . .

On August 30, 2002, the Trustee filed her adversary proceeding complaint. . . . On October 10, 2002, the Trustee filed a motion to sell the property free and clear of liens in Case No. 02-50593. The Trustee has a buyer for the real and personal property for a purchase price of $575,000.00.

---

[1] The parties stated at oral argument that this appeal has been dismissed, so the state court ruling stands.

Appellant's App. at 64-68.

The record on appeal provides some additional detail:  The real estate went into foreclosure as a result of Crescent's failure to pay the mortgage.  The first foreclosure sale, which was conducted on April 2, 1999, was voided when the successful bidders, Crescent and Young, were unable to consummate their bid of $234,000.  Subsequently, they were barred from bidding at the second foreclosure sale, which was conducted on August 7, 1999.  Therefore, the only option that Crescent and Young had for regaining control of the property was to redeem the property.  *See* Ohio Revised Code § 2329.33 (providing that a debtor may redeem real estate from sale by depositing "the amount of the judgment or decree upon which such lands were sold" plus costs and interest).  The record does not disclose the identity of the successful bidder or the amount of the successful bid at the second foreclosure sale.

The trustee's complaint and motion for summary judgment sought to avoid the transfer to Holstein pursuant to 11 U.S.C. § 544 and the Ohio Fraudulent Transfer Act, Ohio Revised Code § 1336.04.  Holstein's motion sought summary judgment based on the court finding that he had paid reasonably equivalent value for the transfer.  Neither motion addressed a third cause of action in the trustee's complaint, asserting that Holstein was not entitled to retain a lien in the event that the transfer to him was avoided under § 544.  *See* 11 U.S.C. § 548(c).  Consequently, the bankruptcy court did not rule on this issue but entered a partial summary judgment granting the trustee's motion and denying Holstein's motion.

The bankruptcy court looked to Ohio Revised Code § 1336.04 in analyzing the facts presented in the record.  The court stated that a transfer can be found fraudulent under Ohio law either as actual fraud, Ohio Revised Code § 1336.04(A)(1), or as constructive fraud, § 1336.04(A)(2)[2].  The court stated that actual fraud, or intent to defraud, can be found if "badges of fraud" are present, such as those listed at subsection (B) of § 1336.04.  The court then noted that constructive fraud requires proof that a reasonably equivalent value has not been given for the transfer.  The court proceeded to look for badges of fraud in the record noting that the transfer was

_____

[2] Although constructively fraudulent transfers also are addressed in Ohio Revised Code § 1336.05, the trustee did not bring her claims under that section.

-6-

to an insider; that the debtor retained possession and control of the transferred property after the transfer; that the transfer had been concealed; that the transfer was the result of Crescent's having been sued or threatened suit; that review of Crescent's bankruptcy schedules showed that "virtually or substantially all" of the debtor's assets were transferred to Holstein; that because the real property had been appraised at foreclosure at $240,000 and Holstein was not to pay more than $215,000 as the redemption fee for the real property plus all plans, permits, drawings, and site plans, the transfer was for less than reasonably equivalent value; and that review of Crescent's bankruptcy schedules showed that the transfer left the debtor with few assets, rendering it insolvent or on the verge of insolvency. In the course of its analysis, the court stated that the record did not show that the debtor absconded, removed or concealed assets; the "badges of fraud" listed as 6 and 7 in the statute had not been proven. Finding that Holstein had "failed to rebut the presumption of fraud created by the badges of fraud proven by the Trustee," the court concluded, "[T]here is competent, credible evidence to support a finding that the transfer from Crescent to Holstein was a fraudulent transfer under O.R.C. §1336.04(A) (2). The numerous badges of fraud shown in this case support such a finding." (Appellant's App. at 76.)

Holstein appealed the Partial Summary Judgment and that appeal, BAP Case No. 03-8067, was dismissed on March 31, 2004, without prejudice to Holstein's right to file a timely appeal upon entry of a final order.

Following a trial on the only remaining issue in the adversary proceeding, that is, the validity, extent, and priority of any lien that Holstein had in the property, on April 20, 2006, the bankruptcy court entered its Opinion and Order ("Lien Order"). In addressing its prior order, the bankruptcy court specifically stated that by entry of its Partial Summary Judgment, the court found that the transfer between Crescent and Holstein was constructively fraudulent pursuant to Ohio Revised Code § 1336.04(A)(2)(b), a statement which tends to refute the possibility that the court mistakenly referred to § 1336.04(A)(2) rather than (A)(1) in its prior order: "This entry by the Court [Partial Summary Judgment] decided that the transfer between the Debtor and Mr. Holstein was constructively fraudulent pursuant to the Ohio Revised Code § 1336.04(A)(2)(b), and voided the transfer between the Debtor and Defendant, Jack Holstein." (Appellant's App. at 80.) Finding that Holstein "paid value and in good faith," the court concluded that, pursuant to § 1336.08(C), Holstein

was entitled to a lien on the property in the amount of $210,000, the amount he paid to Crescent to redeem the property, and stated, "The lien shall be effective as of August 13, 1999, the date of the transfer and shall be in the order of priority it would have held had the deed been recorded on that date." (Appellant's App. at 83.) Although Holstein argued at trial that he was entitled to interest on the lien amount, and the trustee argued that he was not, the bankruptcy court's order is silent on that issue.[3]

On April 28, 2006, Holstein timely filed his Notice of Appeal of the Partial Summary Judgment and of the Lien Order.

## IV.   DISCUSSION

Under § 544 of the Bankruptcy Code, "the trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title."[4]   11 U.S.C. § 544(b)(1).  The Trustee's complaint seeks to avoid the transfer of the property under Ohio Revised Code § 1336.04, alleging that Crescent transferred the property with actual intent to hinder, delay or defraud creditors or, alternatively, that the transfer was constructively fraudulent.  Section 1336.04 provides as follows:

(A)  A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation *in either of the following ways*:

(1)  With actual intent to hinder, delay, or defraud any creditor of the debtor;

(2)  Without receiving a reasonably equivalent value in exchange for the transfer or obligation, *and if either of the following applies*:

---

[3]   The transcript of the trial, which resulted in the Lien Order, was not included in either the trustee's or Holstein's appendix, although the trustee did designate the transcript for inclusion of the record on appeal. (*See* Case No. 02-2402, Doc. No. 67, Trustee's Designation, and Doc. No. 49, Transcript, at 121 and 127-28.)

[4]   No assertion has been made as to the lack of an unsecured creditor who would have standing under state law to avoid the transfer to Holstein to the extent the transfer otherwise met the requirements of avoidability.

(a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;

(b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

(B) *In determining actual intent under division (A)(1) of this section*, consideration may be given to all relevant factors, including, but not limited to, the following:

(1) Whether the transfer or obligation was to an insider;

(2) Whether the debtor retained possession or control of the property transferred after the transfer;

(3) Whether the transfer or obligation was disclosed or concealed;

(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

(5) Whether the transfer was of substantially all of the assets of the debtor;

(6) Whether the debtor absconded;

(7) Whether the debtor removed or concealed assets;

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Ohio Rev. Code § 1336.04 (emphasis added).

The bankruptcy court found that the trustee had met her burden on summary judgment of proving that the transfer at issue was constructively fraudulent under § 1336.04(A)(2). In so finding, the court addressed the factors set forth in § 1336.04(B), which lists the eleven so-called "badges of

fraud" that courts should consider in determining if an inference of *actual* fraud under § 1336.04(A)(1) exists. As one court explained, "[c]enturies of experience have revealed . . . that persons desiring to hinder, delay, or defraud creditors by placing themselves in a collection-proof condition tend recurringly to use the same or similar devices." *Aristocrat Lakewood Nursing Home v. Mayne*, 133 Ohio App. 3d 651, 663 (1999). Thus, these "badges of fraud," as codified in § 1336.04(B), may support an inference of actual fraud. *Id.* "If the party alleging fraud is able to demonstrate a sufficient number of badges, the burden of proof then shifts to defendant to prove that the transfer was not fraudulent." *Baker & Sons Equip. Co. v. GSO Equip. Leasing, Inc.*, 87 Ohio App. 3d 644, 650 (1993).

To reiterate, the badges of fraud that the bankruptcy court found adequately proven were that the transfer was to an insider; that the debtor retained possession and control of the transferred property after the transfer; that the transfer had been concealed by Crescent; that the transfer was the result of Crescent's having been sued or threatened with suit; that review of Crescent's bankruptcy schedules showed that "virtually or substantially all" of the debtor's assets were transferred to Holstein; that because the real property had been appraised for foreclosure purposes at $240,000 and Holstein was not to pay more than $215,000 as a redemption fee for the real property plus all plans, permits, drawings, and site plans, the transfer was for less than reasonably equivalent value; that review of Crescent's bankruptcy schedules showed that the transfer left it with unreasonably small assets in relation to its historical level of assets; and that Crescent was insolvent or became insolvent shortly after the transfer. Nevertheless, although finding that sufficient badges of fraud were proven and that Holstein failed to rebut the presumption, the court concluded that the transfer was fraudulent under § 1336.04(A)(2), which addresses constructive fraud, rather than § 1336(A)(1), which addresses actual fraud. Consequently, the bankruptcy court erred in analyzing the facts under the badges of fraud section of the Ohio statute, which refers only to actual fraud, then concluding that the transfer was fraudulent under the constructive fraud section of the statute.

Furthermore, the factual basis that the court relied upon in finding that Crescent did not receive reasonably equivalent value was insufficient to support judgment as a matter of law. In *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S. Ct. 1757 (1994), the Supreme Court held that the price received at a mortgage foreclosure sale conclusively establishes the "reasonably equivalent

value" of mortgaged property, as long as the state's foreclosure laws are followed. 511 U.S. at 545. There is no claim in this case that the Ohio mortgage foreclosure laws were not followed. Granted *BFP* was decided under 11 U.S.C. § 548 rather than under Ohio Revised Code § 1336.04, but the statutes are essentially the same.

Section 548(a)(1) of the Bankruptcy Code states in relevant part:[5]

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>
> . . . .
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation, *and*
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
>> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was unreasonably small capital; *or*
>>
>> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a)(1)(B) (emphasis added).

Like the Ohio statute, the federal statute requires the court to find either actual fraud or constructive fraud. In finding constructive fraud, the court must determine that a "reasonably equivalent value" was not paid *and* that the transfer resulted in *either* unreasonable depletion of the debtor's assets *or*

---

[5] Section 548(a)(1) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The amended version, however, does not apply to this case. Although the amendment to § 548 was effective on April 20, 2005, in contrast to the October 17, 2005, effective date for most of the BAPCPA amendments, this case was filed before April 20, 2005. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, § 1501(b)(1), 119 Stat. 23, 216 (stating that, unless otherwise provided, the amendments do not apply to cases commenced under title 11 before the effective date of BAPCPA).

the debtor being unable to pay its debts as they became due. Whether the trustee proceeded under the federal statute or the state statute, and presumably she elected the state statute because of the longer reach-back period available, she was required to prove, and the bankruptcy court was required to find, that Crescent had not received from Holstein a reasonably equivalent value for the property. It is undisputed that Holstein paid, and that Crescent received, the redemption fee price for the transfer, $210,000.[6] The parties do not dispute that the real estate was appraised at $240,000 in the foreclosure action, and that appraisal order was not appealed. At oral argument, the parties agreed that the bankruptcy court relied on the sheriff's appraisal of the real estate at $240,000 as the value of the property in finding that the $210,000 paid, the redemption fee, was not a "reasonably equivalent value." However, the bankruptcy court did not address whether in light of *BFP,* Holstein's payment of the redemption fee in the context of the mortgage foreclosure action was a "reasonably equivalent value." In addition, the court did not make a finding as to the value of the personal property associated with the development of the real property, which Holstein also received in the transfer.

Regardless, even if the bankruptcy court had properly made a finding that Crescent did not receive reasonably equivalent value for transfer of the property, the court failed to address the second or third factors under the Ohio statute, at least one of which is required to be proven in order to conclude that a transfer is constructively fraudulent. In other words, in order for the trustee to prove that the transfer was constructively fraudulent, she had to demonstrate (1) that Crescent did not receive reasonably equivalent value in exchange for the transfer *and* (2) that Crescent was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction *or* (3) that Crescent intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due. *See* Ohio Rev. Code § 1336.04(A)(2)(a) and (b). On appeal, the trustee relies on the bankruptcy court's determination that the evidence showed that Crescent was insolvent or became insolvent shortly after the transfer was made and that the transfer left it with unreasonably small assets in relation to its historical level of assets and argues that the court implicitly found that the second and/or third factors were satisfied. Nevertheless, the court did not set forth facts that it

---

[6] *BFP* points out that under the Bankruptcy Code a transfer includes "the foreclosure of the debtor's equity of redemption." 511 U.S. at 535.

-12-

determined to be undisputed indicating either that the transfer resulted in unreasonable depletion of the debtor's assets or that because of the transfer, the debtor had debts it could not pay. Further, the trustee directs the Panel to no such evidence. The court erred in granting summary judgment to the trustee–judgment as a matter of law that the transfer of the property was constructively fraudulent under § 1336.04(A)(2). "'If the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the [reviewing court] may not engage in its own factfinding but, instead, must remand the case to the bankruptcy court for the necessary factual determination.'" *Helfrich v. Thompson (In re Thompson)*, 262 B.R. 407, 408 (B.A.P. 6th Cir. 2001) (citations omitted).

Finally, Holstein contends that, to the extent the transfer of the property is properly avoided, the bankruptcy court erred in failing to include interest on the lien granted to him. He argues that he is entitled to interest under Ohio Revised Code § 1336.08(C)[7] as a good faith transferee, or under 11 U.S.C. § 506(b) as an oversecured creditor. While the bankruptcy court found in its Lien Order that Holstein was a good faith transferee and was entitled to a lien in the amount of $210,000, the order is silent on the issue of interest. However, because interest is only an issue if the transfer of the property is avoided as fraudulent, the Panel does not address the issue at this time. In light of the Panel's conclusion that the bankruptcy court erred in avoiding the transfer as fraudulent on summary judgment, the Lien Order also must be reversed and remanded for further proceedings.

## V. CONCLUSION

For the foregoing reasons, the bankruptcy court's order granting the trustee summary judgment and avoiding Crescent's transfer of the property to Holstein, and its order granting Holstein a lien on the real property, are REVERSED and REMANDED for further proceedings consistent with this opinion.

---

[7] Section 1336.08(C) provides that a good faith transferee is entitled, "*to the extent of the value given*" to the debtor for the avoided transfer, to any of the following: "(1) A lien on or a right to retain any interest in the asset transferred; (2) Enforcement of any obligation incurred; (3) A reduction in the amount of the liability on the judgment."